HANNAH CURRAN & others *vs.* JULIA O'MEARA & others.

Middlesex.    December 14, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Voluntary Association,* By-laws, Suspension of membership.

When the members of a voluntary association, which is a subordinate circle subject to the jurisdiction of a grand circle of a fraternal beneficiary order, have a beneficial interest in property and funds of such subordinate circle, they cannot be expelled or suspended from membership by the officers of the grand circle for non-payment of dues or taxes to the grand circle, under a by-law authorizing such expulsion or suspension for such cause, without reasonable previous notice of the charges against them and an opportunity to appear and be heard upon the subject, although the by-laws contain no provision requiring the giving of such notice.

BILL IN EQUITY, filed in the Superior Court, in substitution for a previous bill, on February 2, 1911, by the alleged officers and members in good standing of Ayer Circle, No. 478, Companions of the Forest of America, an unincorporated voluntary association existing under a charter granted by the Supreme Circle, Companions of the Forest of America, against persons alleged to have been former officers of said Ayer Circle and to have ceased to be such officers, against those persons claiming to be members of said Ayer Circle who recognized said defendants as such officers and against certain banks, to obtain possession of the record books, funds and property of the said Ayer Circle which might be in the possession or subject to the control of the defendants.

The answers of those defendants who were alleged in the bill to have been former officers of said Ayer Circle alleged, among other matters, that they were at the time of the filing of the bill and continued to be such officers and were recognized as such officers by a large majority of those who were members of said Ayer Circle before November 1, 1910, and by all of the present members of said circle; and that the plaintiffs formerly were members of said circle and wrongfully had seceded therefrom and endeavored to assume its name.

The case was referred to William Harold Hitchcock, Esquire, as master. The important facts found by him are referred to in the opinion. The plaintiffs contended that all the members of Ayer Circle were suspended on November 1, 1910, by the grand chief companion of the Grand Circle of Massachusetts in accordance with the laws of the order and that the plaintiffs were the only members who subsequently were reinstated in accordance with those laws and therefore were entitled to the money and other property of the circle. The defendants disputed the validity of the suspension which they had disregarded.

The following is taken from the master's report:

"On November 1, 1910, the defendant Julia O'Meara was chief companion of the Ayer Circle, the defendant Katherine O'Neil its financial secretary and the defendant Minnie Murphy its treasurer.

"Prior to June, 1909, there had been certain internal dissensions in this order in Massachusetts and these troubles culminated at the annual convention of the Grand Circle of Massachusetts held at Springfield on the first Tuesday in June, 1909. As a result two rival conventions were held and two sets of grand officers were elected, each claiming to be the only legal convention and officers. These rival factions may be designated as the Mahoney and McCarthy factions, being thus named from the names of the grand officers most prominent in the disputes. This controversy eventually resulted in the withdrawal from the order of a substantial number of members and circles. Prior to June, 1910, many of the officers elected by the Mahoney faction and a substantial number of the circles of the order in Massachusetts withdrew from it and formed an independent rival order.

"A large majority of the Ayer Circle took sides with the Ma-

honey faction and the circle considered the matter of seceding from the order, but acting upon advice of counsel did not do so. It paid the per capita tax imposed by the laws of the Grand Circle due in June, 1909, to the grand financial secretary elected by the Mahoney faction. It has paid no per capita tax to any person or representative of the order since that time. It has made no attempt whatsoever to do so. On December 7, 1909, the circle voted not to pay the tax then due. Subsequently it voted not to reconsider this action.

"The defendants testified that the tax was not paid because they did not consider Mrs. McCarthy and her associates the legally elected officers of the Grand Circle."

On October 24, 1910, Mrs. McCarthy as the grand chief companion, wrote to the Ayer Circle a letter addressed to the financial secretary, which contained the following: "I am personally visiting every circle in the state in an endeavor to help by advice or information in any way needed. . . . I would like to have the pleasure of meeting all your members, if I could, but could not ask you to notify them, if you will however let as many know as possible I would consider it a great favor."

"On the evening of November 1, 1910, Mrs. McCarthy accompanied by another grand officer visited the Ayer Circle at its regular meeting. She was met in the anteroom by the defendant O'Meara and requested to wait there a few minutes. Mrs. O'Meara returned to the hall and called the meeting to order.

"At this time the circle had ninety-eight or ninety-nine members and there were about twenty-five or thirty present at the meeting. During the meeting Mrs. O'Meara announced that there were visitors in the anteroom and, after the regular business had been transacted, she asked the outer guard to bring them in. . . .

"As Mrs. McCarthy and her associate entered the hall the meeting was closed. The defendant O'Meara then introduced the visitors and announced that they would doubtless be glad to speak if the members cared to hear them. Mrs. McCarthy then addressed the meeting. She announced that as grand chief companion she was visiting the circles of the order in Massachusetts. She complained of the manner of her reception and told of the cordiality with which she had been received by other circles.

She declared her willingness to attempt to settle any grievance that they had with the Grand Circle or to advise them with reference to any differences among themselves. She fully explained the fact that the circle was in arrears in the payment of the per capita tax and pointed out the requirement of the laws of the order as to that tax and the effect upon the standing of the members of the failure to pay it. She declared that something must be decided regarding the standing of the Ayer Circle that night and asked those present who desired to remain loyal and to retain their membership in Ayer Circle to stand. Seven members arose, but one at once sat down again. Mrs. McCarthy continued her talk along the same lines and again asked those who desired to retain their membership to stand. The same six who remained standing before stood again. She then announced that she would be obliged to suspend the circle and let such members as desired apply for reinstatement. There was some discussion and some questions were asked about the Springfield convention and the standing of the Ayer Circle, but no action was taken or attempted by the meeting. Mrs. McCarthy for a third time asked those to stand who desired to retain their membership and only the same six stood. She asked the defendant O'Meara if her letter of October 24, 1910, had been read in the circle and was informed that it had not. She thereupon replied, 'Well, there is nothing left for me to do but to suspend the circle and I now suspend Ayer Circle and its members; you may apply for reinstatement or appeal from this suspension.' She then left the platform and the meeting broke up.

"No charges were formally preferred against the circle except such charges as Mrs. McCarthy made in her address and no notice was given of any proposed suspension except such notice as was given in that address. The letter of October 24 was the only communication that passed between Mrs. McCarthy and the circle or its officers prior to November 1, 1910. The members not present at the meeting had no notice whatsoever of the proceedings until subsequently informed."

The master made the following findings: "I find and rule that no reasonable notice was given Ayer Circle of the proposed action of Mrs. McCarthy and that the circle as a whole and particularly the members not present on November 1 did not have an

opportunity to be heard upon the matter of the payment of the per capita tax or of the suspension of the circle. If such notice had been given by Mrs. McCarthy to the circle, its officers could have notified all the members and those who were absent on November 1, could, if they desired, have been present and protected their rights in the circle and its property. Possibly if there had been a full attendance on November 1, the action of the circle would have been entirely different. There was no evidence before me that any list of the members of Ayer Circle was in the possession of the Grand Circle of Massachusetts or any of its officers.

"I find, however, that the refusal and the failure of the circle to pay the per capita tax prior to November 1, 1910, was the act of the circle as a whole and not that merely of its officers. I find that that refusal was wilful and intentional and that therefore a valid cause for suspension in fact existed on November 1, 1910.

"The plaintiffs contend that the action of Mrs. McCarthy as grand chief companion in suspending Ayer Circle and in thereafter reinstating the plaintiffs and reorganizing them as Ayer Circle was a valid execution of a power given her by the laws of the Grand Circle of 1910, Article VI., Section 1, F. I. and J. They therefore contend that they alone are members in good standing of the Ayer Circle and that the officers elected by them are entitled to the possession of the funds and property of the circle.

"Clause F of this section in question gives the grand chief companion the power 'to suspend any subordinate circle under the jurisdiction of this Grand Circle for cause, subject to appeal as hereinafter provided.' If this provision be interpreted to require reasonable notice to an offending circle of a proposed suspension and an opportunity to be heard upon charges made against it, then Mrs. McCarthy did not comply with this law and her action in suspending the circle is invalid. If, on the other hand, the by-law be interpreted to authorize the suspension of a subordinate circle without notice and without an opportunity to be heard, I am of opinion that this provision is unreasonable and invalid and that the action of Mrs. McCarthy was therefore without authority and void. In either event the result is the same.

"As a conclusion therefore from the foregoing findings and rulings I find and rule that the defendants named in the bill and those represented by them continued to be members in good standing of Ayer Circle down to the time of the filing of the bill, notwithstanding the acts of Mrs. McCarthy, and that the defendants named in the bill continued to be the officers of Ayer Circle and are entitled to the possession of its funds and property.

"In the event that it be held that the by-law upon which the plaintiffs rely authorizes a suspension without notice and that so interpreted it is a valid by-law, I find and rule that the defendants named and those represented by them have been legally suspended from Ayer Circle, that the plaintiffs are members in good standing of that circle and that the officers elected by the plaintiffs are entitled to the possession of the funds and property of the circle."

Other findings of the master are stated in the opinion.

The case was heard upon the bill and answer and the master's report by *Pierce,* J., who made a decree that the bill be dismissed. The plaintiffs appealed.

*H. L. Brown,* (*E. Field* with him,) for the plaintiffs.

*J. M. Maloney,* for the defendants.

BRALEY, J. The plaintiffs not having excepted to the master's report, the question before us is whether upon his findings the decree dismissing the bill should be affirmed. The parties were members of Ayer Circle, No. 478, of the Companions of the Forest of America, a secret fraternal beneficiary order, composed of a supreme circle with grand circles and subordinate circles, each of which is a voluntary association. It had an elaborate system of general laws for its own government and for the creation and government of grand and subordinate circles. A grand circle having been duly organized in this Commonwealth, Ayer Circle was recognized as a subordinate circle under the jurisdiction of the grand circle and subject to all general laws then in existence or which might thereafter be adopted by the grand circle under the power reserved to that body in the general laws to make changes. By reason of internal dissensions the order in this jurisdiction became divided into two factions resulting in two rival annual conventions, where the officers elected by each claimed to be the only legal officers of the grand circle. It is

stated, that a large majority of the members of Ayer Circle were favorable to one faction in preference to the other, but did not secede from the order, and paid the capitation taxes for that year to the financial secretary elected by the convention with which it was in sympathy. It does not appear that the rival faction ever called or held an annual convention, and when the time came for calling the next convention the position of grand financial secretary was held by an incumbent in possession of the office, who performed its duties, and the notices for the convention were issued in discharge of her secretarial functions as prescribed by the general laws. It was unnecessary for the plaintiffs to offer further proof of her authority. *Attorney General* v. *Crocker,* 138 Mass. 214. *Fitchburg Railroad* v. *Grand Junction Railroad & Depot Co.* 1 Allen, 552, 557. The master having found that this convention was called and held with a quorum of officers and delegates in accordance with the laws of the order, he rightly ruled, that Julia A. McCarthy was legally elected grand chief companion of the grand circle, and that her election was binding upon all subordinate circles. The convention also adopted a revision of the grand laws of the grand circle, which, having been approved by the supreme supervisor of laws, became effective even if no copy was sent to Ayer Circle, or to any of its members. By article sixteen, section two, of these laws it was provided among other causes for dissolution, that a subordinate circle may be dissolved "for improper conduct," and "for neglecting or refusing to make returns, or for non-payment of dues or taxes to the grand circle," and by article six the grand chief companion was authorized to suspend any subordinate circle for cause, subject to the right of appeal to the grand executive council, and from this body to the grand circle.

But if Ayer Circle was in arrears for capitation taxes, which the master finds were intentionally withheld, and there is plenary evidence in the report that a majority of its members refused to recognize the authority of the grand chief companion, or of the grand circle, the summary and arbitrary conduct of Mrs. McCarthy in suspending the circle and taking its charter, without giving any notice of her purpose, was in violation of the property rights of the members, which cannot be distinguished from the rights of the circle as a voluntary association. The grand laws contain no

provisions for notice to the circle or to its members before this authority could be exercised. Yet it is manifest from the very full statements in the report that membership conferred beneficial interests in a very appreciable fund in possession of the treasurer, who has not been joined as a party, as well as in other valuable property and paraphernalia now held by the defendants and formerly used by the circle at its meetings in accordance with the rules and ritual prescribed by the order. *McFadden* v. *Murphy,* 149 Mass. 341. If the object of the grand chief companion had been fully accomplished it would have dissolved the circle, the defendants would have been excluded, and the fund and other property would have been transferred to those members who adhered to the grand circle as then constituted and represented by her. The subordinate circle as a constituent part of the order and a majority of its members may have been amenable to discipline, even to the point of suspension and expulsion, but until reasonable notice in some appropriate form had been given to the members of the charges, with the opportunity to appear and to be heard upon the subject, neither the grand chief companion nor the executive council or the grand circle could deprive a subordinate circle, or any of its members, of these valuable rights. *Murdock's case,* 7 Pick. 303. *Murdock* v. *Phillips Academy,* 12 Pick. 243, 264. *Gray* v. *Christian Society,* 137 Mass. 329. *Karcher* v. *Supreme Lodge Knights of Honor,* 137 Mass. 368, 372. *Kidder* v. *United Order of the Golden Cross,* 192 Mass. 326, 335, 336. *Sabourin* v. *Lippe,* 195 Mass. 470, 479. *Wachtel* v. *Noah Widows & Orphans' Benevolent Society,* 84 N. Y. 28.

Nor are the defendants concluded from making this defense, because they resorted to an appeal as provided by the general laws, in which the acts of the grand chief companion were affirmed. The appeal, even if entered with the grand financial secretary who lawfully held the office, was not prosecuted by them, and no notice having been given to the defendants of the proposed expulsion or suspension, the appellate tribunals were without jurisdiction. An act originally void could not be made valid by their appeal. *Hoeffner* v. *Grand Lodge of the German Order of Harugari,* 41 Mo. App. 359, 367. *People* v. *Women's Catholic Order of Foresters,* 162 Ill. 78, 82, 83.

The proceedings of suspension, followed by reinstatement of

the loyal members and the reissue of the charter to them having been unauthorized, the association has not been dissolved, and the plaintiffs cannot maintain their suit.

*Decree affirmed.*