IDAN LIITTO TEMPERANCE SOCIETY *vs.* ALEX A. ISAKSON & others.

Worcester.   September 29, 1914. — October 23, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Corporation,* Dissolution, Temperance society.   *Temperance Society.*   *Trust,* What constitutes.   *Words,* "Corporation."

On a petition under R. L. c. 109, § 52, by a corporation organized under the general laws of this Commonwealth for the purpose of promoting the cause of temperance among people of a certain nationality in a certain city and having no capital stock, a progressively continuous diminution in membership, in

attendance at meetings and in zeal for the promotion of temperance, due to the greater efficiency of another kindred organization, may be found to be an adequate reason for the dissolution of the corporation.

A small minority of the members of a corporation, organized under the general laws of this Commonwealth for the purpose of promoting the cause of temperance among people of a certain nationality in a certain city and having no capital stock, have no absolute right to insist upon the continued existence of the corporation against the will of the majority, and such a corporation does not hold its property, which has been derived from the dues of members and from entertainments, upon any express or implied trust that involves its perpetual existence.

If a by-law of a corporation, organized under the general laws of this Commonwealth for the purpose of promoting the cause of temperance among people of a certain nationality in a certain city and having no capital stock, provides that "If the membership falls below seven the society will stop holding meetings and the remaining members are to hold property for the society for the period of two years," and that the assets shall be applied for the benefit of some similar organization, the effect of this provision is not to point out the exclusive method of winding up the corporation, nor does it prevent a larger number of members than seven from deciding on sufficient grounds that the corporate existence should be terminated although the affairs of the corporation have not reached so low an ebb as that designated by the by-law. *Whether* this by-law requires that upon dissolution any assets remaining after the payment of the debts of the corporation shall be applied for the benefit of some similar organization instead of being distributed among the members as directed by R. L. c. 109, § 55, here was referred to as a question which did not arise and was not passed upon.

The provision for the dissolution of a corporation contained in R. L. c. 109, § 52, applies to every corporation in which the members, or a majority of them, have the right to control the corporate property and to direct its final disposition, and consequently includes a corporation organized under the general laws of this Commonwealth for the purpose of promoting the cause of temperance among people of a certain nationality in a certain city and having no capital stock, and such a corporation, acting by the majority of its members, may maintain a petition for dissolution under that statute and need not resort to the alternative procedure for obtaining a dissolution provided by § 56 of the same chapter.

PETITION under R. L. c. 109, § 52, filed in the Superior Court on August 7, 1913, by the Idan Liitto Temperance Society, a corporation organized under the laws of this Commonwealth, acting by a majority of its members, for a final order of the court dissolving that corporation.

The answer of the minority of the members, consisting of nine, alleged among other things that all the property of the corporation was "held in trust for the members of the society in accordance with its expressed purposes, and the majority have no right to in any way interfere with its use for those purposes."

The case was referred to William J. Taft, Esquire, as master. The findings contained in his report included the facts which are stated in the opinion.

The case was heard upon the respondents' exceptions to the master's report by *Dubuque,* J., who made an interlocutory decree as follows:

"First.   That said corporation is entitled to dissolution as prayed for in its petition, and the said corporation is hereby dissolved.

"Second.   Alexander B. Campbell, Esquire, is hereby appointed receiver to take charge of the estate and effects of the said corporation, and to collect its debts and all property due and belonging to it; with power to prosecute and defend suits in the name of said corporation, or otherwise, to appoint agents under him, and to do all other acts which might be done by said corporation, if in being, which may be necessary for the final settlement of its unfinished business; the aforesaid powers of said receiver to continue until otherwise ordered by this court.

"Third.   And said receiver is hereby especially authorized and empowered to make sale of all real estate belonging to the said corporation, and to make, execute and deliver in pursuance of this decree and in the name of the said corporation by himself as receiver any deed or deeds that may be necessary to 'pass the legal title to said real estate to the purchaser or purchasers thereof. The purchase price for the said real estate thereupon to become in the hands of the said receiver a part of the estate and effects of said corporation.

"Fourth.   The respondents' exceptions are overruled."

The respondents appealed; and the judge, being of opinion that the question of law involved in the interlocutory decree ordering a dissolution of the corporation so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by this court, reported the case for such determination.

*E. G. Norman,* for the respondents.

*M. M. Taylor,* (*M. C. Taylor* with him,) for the petitioner.

Rugg, C. J.   This is a petition brought in the name of a corporation for its dissolution.   The petitioner is organized under the general law for the purpose of promoting the cause of tem-

perance among the Finnish people of Worcester and vicinity. It has no capital stock. It is the successor of a voluntary unincorporated association having a like purpose, which conveyed all its assets to the petitioner upon its organization. The property of the associates was derived wholly from the dues of members and from entertainments given by them. That of the petitioner came from similar sources and from the transfer to it of the property of the associates and from the rent of real estate owned by it.

It is conceded by the members of the corporation who oppose the allowance of the petition that the property of the petitioner is not charged with a public charitable trust. The terms upon which was made the transfer of the property of the associates to the corporation are not set out in the record. Perhaps it may be inferred that the same persons, who constituted the voluntary association, organized the corporation, and the transfer of the property was treated as a continuation of its use for the same purpose. The title to the real estate, in which a large part of the assets of the petitioner is invested, stands in its name in fee simple, without mention of any trust or other limitation.

The membership has dwindled from about two hundred to thirty-two. A large majority of the members have voted that the corporation be dissolved (eight only having voted against it and nine now appearing in opposition to this petition), on the grounds that there has been a marked falling off in membership, in attendance at meetings and in general interest. The reason for this condition, which the master has found to exist, is largely because of the greater popularity of a rival Finnish Temperance Society. The master also has found as a fact that there is sufficient cause why the corporation should be dissolved. The evidence upon which this finding was based is not reported and, as the finding is not inconsistent with other parts of the master's report, it must be accepted as final. A progressively continuous diminution in membership, in attendance at meetings and in zeal for the promotion of temperance of the proportions such as is here disclosed, due apparently to the greater efficiency of another kindred organization, might be found an adequate occasion for dissolution of the petitioner.

The facts fail to show anything more than a private organization

for the moral benefit of those who from time to time should be its members. There appears to be no obligation for the propagation of missionary work for temperance among those of like national traditions. *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, 160 Mass. 409. *Coe* v. *Washington Mills*, 149 Mass. 543. There is no absolute right in a small minority to insist upon the continuance of such a corporation against the will of the majority. The corporation does not hold its property upon any express or implied trust which involves its perpetual existence. It is the owner of that which is received from its members by way of dues and receipts from entertainments, and is obliged to devote such property only during the continuance of its corporate life to the purposes for which it was organized. The implication from these facts, in the absence of contrary express declaration or implied trust arising from other conduct, is that the majority, for sufficient cause, may suspend the activities of the institution and close up its affairs. *Clark* v. *Evangelical Society in Quincy*, 12 Gray, 17. *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415, 423. The right of dissolution may be exercised under the circumstances here disclosed.

The ability of a small minority to continue the corporation, if it cannot be efficiently administered, is no reason for thwarting the judgment of the large majority of members in favor of a dissolution. The conclusion cannot be pronounced unwarranted that nine persons in a city the size of Worcester, and under all the circumstances here disclosed, cannot maintain an effective society for the promotion of temperance among the people of Finnish extraction.

This is a corporation distinct in kind from a church such as was before the court in *In re New South Meeting-House*, 13 Allen, 497, and in *Massachusetts Baptist Missionary Society* v. *Bowdoin Square Baptist Society*, 212 Mass. 198, 202.

There is a by-law of the corporation that "If the membership falls below seven the society will stop holding meetings and the remaining members are to hold property for the society for the period of two years," and that the assets shall be applied for the benefit of some Finnish Temperance Society in Massachusetts. The effect of this is not to point out the exclusive method of winding up the corporation, nor to prevent a larger number of

members from deciding upon sufficient grounds that corporate existence should be terminated even when its affairs have not reached so low an ebb as fixed in the by-law.

The objecting members of the corporation offered to prove "the views and intentions of the originators and founders of the society who contributed toward its funds as manifested by their conduct and statements." The master excluded evidence to this end rightly. It has been found in substance that no contributions were made except by way of dues of members. These were not contributions in the sense of founding a trust. Moreover, the offer did not go to the extent of showing donations given by the donor and accepted by the corporation upon any trust express or implied. The views and purposes of individual members, expressed in the country and not manifested in such way as to bring home to the corporation either directly or by fair implication knowledge of a trust attaching to a gift, was of no consequence. A different rule would apply when a trust is established or when the offer of proof goes to the extent of showing a solicitation or receiving of gifts for a charitable use. *In re New South Meeting-House*, 13 Allen, 497, 506.

Evidence as to what occurred at meetings subsequent to the vote to dissolve the corporation and when no quorum was present rightly was excluded. The refusal of the master to receive evidence as to the number of people who since the filing of the present petition had expressed a desire to join the society is not open to exception, based as it was on a finding that the contest between the members had become bitter and the conditions were abnormal and could not be relied on in determining the future prospects of the society.

It is not contended that the assets shall be divided between the members of the corporation. The disposition to be made of them is not presented by this report, which brings up only the interlocutory decree. The time is not ripe for a decision whether the terms of this by-law as to the appropriation of the remaining assets of the corporation may be binding notwithstanding R. L. c. 109, § 55, or whether the declared purpose of the corporation may not require some distribution for a kindred use.

It is objected that such a corporation as the petitioner cannot petition for a dissolution under R. L. c. 109, § 52, but that it can

proceed only under § 56. The first of these sections provides that "If a majority in number or interest of the members of a corporation desire to close its affairs, they may file a petition therefor in the Supreme Judicial or the Superior Court, setting forth in substance the grounds of their application," and that, after notice and hearing, the court "may decree a dissolution of the corporation." The material words of the last of these sections are "If a petition, signed and sworn to by a majority in number or interest of the members of a corporation organized under the general laws, except a corporation created for the purpose of business or profit having a capital stock divided into shares or which is under the supervision of the insurance commissioner, has, with the certificate of incorporation, been filed in the office of the Secretary of the Commonwealth stating that such members desire to surrender the certificate of incorporation and to have the corporation dissolved and giving their reasons therefor, the secretary, if he considers such reasons sufficient, shall require" notice to be published that "for reasons which appear to him to be sufficient, the certificate of incorporation . . . is annulled." It is to be noted that in each section the power is conferred respecting "a corporation." In § 52 no words of limitation are used. The word there is left to be given the broadest effect which it could have under the usual canons of statutory interpretation. The substance of this section was enacted first in 1852. It was construed in *In re New South Meeting-House,* 13 Allen, 497. It there was held in substance that, notwithstanding its comprehensiveness, the word obviously was intended by the Legislature to be applicable only to private corporations in which the corporate property is held under the entire control and management of the members, subject to no trusts except that it is to be used for the purposes for which the corporation is created and is liable to be disposed of in such manner as the majority may direct whenever they shall deem a further continuance of the corporate business inexpedient or unnecessary. This construction gives a wide scope to the provisions of the statute. It embraces within its terms every corporation in which the members, or a majority of them, have the right to control the corporate property and to direct its final disposition, "whatever may have been the use, whether secular, religious or charitable, to

which it may have been previously held and appropriated." It there was pointed out with amplification of reasoning that it could not have been intended to include corporations administering public charities and religious, educational and other benevolent foundations and institutions, nor to authorize the change of the tenure of estates, the terms of trusts or the diversion of property to uses foreign to those to which it originally was appropriated.

The same comprehensive word "corporation" is employed in § 56 as in § 52, save that it is limited to such as are organized under the general law, and are not created for business or profit with capital stock divided into shares, and are not under the supervision of the insurance commissioner. Thus it is greatly restricted in its operation. But still it is the same word, "corporation." Private, religious and charitable corporations are within its scope. These had been held to be within the scope of § 52, as has been shown. The same reasoning which brought the court to the conclusion in *In re New South Meeting-House,* that § 52 did not include corporations administering public charities of any kind, is equally persuasive to the same conclusion as to § 56. The latter section was enacted first by St. 1898, c. 502, long after the earlier section. It provided a short, simple and inexpensive method for ending through the agency of an administrative officer the existence of corporations, chiefly in their nature those which had been organized for private charities and whose usefulness for any reason was at an end. But, except as expressly modified, the word corporation should be given the same meaning in each section. Therefore, § 56 is not reasonably susceptible of the construction that the method of dissolution there provided was intended to be exclusive of that of the earlier section as to corporations within the scope of both sections. As to such corporations, they afford alternative procedure and should be given concurrent effect. Many occasions might arise where resort to a court in the first instance would be highly desirable.

*Interlocutory decree affirmed.*