JOHN B. DONOVAN & others *vs.* OSCAR L. DANIELSON & others.

Suffolk.    October 10, 11, 1929. — May 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Voluntary Association,* Fraternal organization.

A voluntary fraternal association was organized with a "supreme court" with jurisdiction national in scope; "grand courts" with jurisdiction confined to their several States; and local "courts" formed in many cities and towns. There was no incorporation. Every member of a local court on his admission agreed to "conform to and abide by all the rules of the court and of the order now in force, or hereafter to be made, or submit to the penalties therein contained." Previous to December 1, 1913, a local court had accumulated a fund of over $3,500, proceeds of moneys collected in part from dues and fines levied upon the members, but chiefly from the earnings of entertainments given by the court, with their accumulations. No law of the order required that such fund be collected by the local court. No other organization affiliated with the order had contributed to it. It was collected by the members of the local court, solely for their benefit, and it had not been dedicated by any action of the court or its members to the benefit of the general order or of any affiliated body. No part of it was subject by the constitution or laws of the general order before

January 1, 1920, to be applied to the benefit of any one not a member of the court or pursuant to the vote of the court. The local court became dissatisfied with a decision of the supreme court to establish a system of general benefits throughout the order beginning with January 1, 1920, and voted to withdraw from the order and to dissolve on January 7, 1920. Their funds accordingly were distributed among the members who at once paid them back for the formation of a new order. The grand court of the State by a suit in equity sought to have the fund paid to them, relying on provisions of a law of the order in force since 1907, in substance that, upon secession, dissolution or expulsion, the property of the offending court "shall become the property of the grand court within whose jurisdiction said court was." From a final decree granting relief, the defendants appealed. *Held*, that

(1) The fund was held by the local court in trust for its members;

(2) The agreement of each member on his admission to "conform to and abide by all the rules of the court and of the order now in force, or hereafter to be made, or submit to the penalties therein contained" did not go far enough to pass title to the fund to the grand court;

(3) There was nothing in the nature of a dedication of the moneys collected to any owner other than the local court which collected it, or to any use other than the benefit of the members of that court;

(4) The decree was reversed and the bill was ordered dismissed.

BILL IN EQUITY, filed in the Superior Court on June 30, 1920, and afterwards amended, by the members of the Grand Court of Massachusetts, Foresters of America, against officers and certain individuals of Court Gustaf Wasa, Foresters of America, and each and every member thereof, alleged to be "too numerous to be herein named individually and whose names are to the plaintiffs unknown and who are fairly represented by the above named defendants."

The suit previously was before this court on appeal from a decree overruling a demurrer by the defendants and from a final decree for the plaintiffs after a hearing on the merits, when the demurrer was ordered sustained and a decree was ordered dismissing the bill, "but without prejudice to an application to the Superior Court to amend the bill by a joinder of all individuals who compose the association described in the bill as the Grand Court," as reported in 244 Mass. 432. Later the suit again was before this court on the question, whether the Superior Court had jurisdiction to enter an order that the case remain on the docket after the effective date of a general rule of dis-

missal, and it was decided, as reported in 263 Mass. 419, that the court had such jurisdiction.

Thereafter the bill was amended in accordance with the requirements formerly stated by the court, and was heard on the merits by *Lummus*, J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found by the judge are stated in the opinion. By his order a final decree was entered "that the plaintiffs as the Grand Court of Massachusetts of the Foresters of America, a fraternal beneficiary order, on January 7, 1920, were, and ever since have been, entitled to the legal title to, and the possession and control of, all the funds and property which, on December 23, 1919, were held by the defendants as officers or members of Court Gustaf Wasa, a subordinate court of said Foresters of America, amounting to $3584.34"; and directing the defendants to pay that sum, with interest, to the plaintiffs.

The defendants appealed.

*F. W. Campbell*, for the defendants.

*J. M. Maloney*, (*E. Carr* with him,) for the plaintiffs.

WAIT, J. The defendants are all the persons who in December, 1919, constituted Court Gustaf Wasa, a voluntary association affiliated with the Foresters of America. The plaintiffs are the Grand Court of Massachusetts of the Foresters of America. They bring this bill in equity to obtain possession of a fund of $3,584.34 which in said December was held by the Court Gustaf Wasa. This fund was the proceeds of moneys collected in part from dues and fines levied upon the members of Court Gustaf Wasa in accord with laws of the Foresters of America, but chiefly from the earnings of entertainments given by the court, with their accumulations. Except in a small amount the principal had been acquired before December 1, 1913. No law of the Foresters of America required that it be collected by the court. No other organization affiliated with the Foresters of America had contributed to it. It was collected by the members of Court Gustaf Wasa, solely for the benefit of members of the court, and it had not been dedicated by any action of the court or its members to the

benefit of the general order or any affiliated body. No part of it was subject by the constitution or laws of the general order of Foresters of America before January 1, 1920, to be applied to the benefit of any one not a member of the court or pursuant to the vote of the court.

In consequence of an amendment in the laws of the general order which was to take effect on January 1, 1920, the members of Court Gustaf Wasa held meetings and a post card canvass with regard to withdrawing from the Foresters of America and forming an independent voluntary sick benefit organization. By almost unanimous vote they decided to withdraw. Pursuant to vote of the court, the treasurer withdrew all the court's money from the bank and put it in the form of checks to its creditors and a check to each member for his *per capita* share in the surplus. This was done shortly after December 17, 1919. The members' checks were for less than $10 each. They were held by the treasurer. At a special meeting held on January 7, 1920, by a vote of three hundred and eighty to ten it was voted to dissolve; and, pursuant to a vote, all the court's belongings were placed on sale and sold. The records conclude: "This is the way Court Gustaf Wasa ended." On the same day they formed the Brotherhood Gustaf Wasa. Every member of the court became a member of the brotherhood; and everyone delivered to the treasurer of the brotherhood the check which he had received as a member of the court. Not one now objects to the dissolution of the court or makes any claim as a member of the court upon the order of Foresters.

The order of Foresters of America is organized with a supreme court with jurisdiction national in scope; grand courts, with jurisdiction confined to their several States; and subordinate courts formed in many cities and towns. Until 1917 the supreme court did not undertake the collection or payment of any benefits to members; nor did the grand courts require the subordinate courts to join in any grand court benefits. Such benefits as were paid were constituted and raised by such subordinate coun-

cils as so chose. These benefits were provided for and controlled by the several courts under by-laws made by the court, and were met by dues levied only upon the members of the court giving the benefit. Court Gustaf Wasa made provision for benefits. In 1917 a temporary fund for benefits to members of the order in the military and naval service of the United States during the World War applicable to the entire membership of the order was created and administered by the supreme court. It is immaterial here. The dissatisfaction in Court Gustaf Wasa was due to the decision of the supreme court to establish a system of general benefits throughout the order beginning with January 1, 1920.

The title to a fund so collected and held is in the subordinate court which provides for it, and, if the fund is held upon any trust, the *cestuis* of the trust are the members of the court or those designated by its by-laws. *Torrey v. Baker*, 1 Allen, 120. It remains in the unincorporated voluntary association constituting the subordinate court unless it has passed from it pursuant to law. The plaintiffs contend that it has so passed to the Grand Court of Massachusetts, in consequence of the secession of Court Gustaf Wasa, by force of the constitution and laws of the Foresters of America applicable in the event of such secession. Since 1895 those laws have forbidden, under penalty of suspension, dissolution or expulsion, any grand or subordinate court to withdraw, except in certain cases not material here, but made no provision before December 1, 1907, with regard to the property of a court so offending. On the latter date a law provided that upon dissolution or expulsion the property of the offending court "shall become the property of the grand court within whose jurisdiction said court was." December 1, 1913, the law was changed to read: "No grand or subordinate court shall secede or attempt to secede from the order; nor shall any member vote for or urge his court to secede or attempt to secede; if a subordinate court secedes, all property, moneys, goods and effects which it had shall vest in and be delivered

to the grand court or supreme court to whichever it was attached; and same shall be administered as herein provided for funds, property, etc., of dissolved or expelled courts." The property so taken was to be held for such court if it reorganized, and applied for the benefit of those of the court who opposed secession. In the same year the Grand Court of Massachusetts made a law that "all property of a subordinate court is a trust fund for the purpose of carrying on the benefit features of the order, and if the court shall ever disband or dissolve all of its property shall immediately go to the Grand Court Foresters of America of Massachusetts." It is to be noted that substantially all the fund here in question was collected before 1913; that Court Gustaf Wasa has not been reorganized; that no one, in the end, opposed secession; and that no one has sought a benefit from the order of Foresters.

The plaintiffs rely principally upon the recent decision in *Tiffany* v. *Mooney*, 263 Mass. 264. That case, however, differs essentially from the one now before us. There the title to the property in question was in the corporation, the "Order of United American Men of North America," of which the members of the local council were a part. The property was collected and held for the corporation. There were dissenting members of the seceding body who had claims against the corporation of which the seceders had been members and for whom that corporation held the property in trust. The cases cited at page 269 abundantly show that, in such circumstances, a body of seceders, although a large majority of the local body, could not retain the property held by that local branch of the corporation against the corporation.

Here, even if it be assumed that title to the fund was in the grand court, the property was held in trust for the members of Court Gustaf Wasa, and is held on a bare trust such that they are entitled to demand a conveyance. *Sears* v. *Choate*, 146 Mass. 395. No former member objects and claims a right to a different application of the trust fund. See *Kane* v. *Shields*, 167 Mass. 392.

It is true that every member of Court Gustaf Wasa on his admission agreed to "conform to and abide by all the rules of the court and of the order now in force, or hereafter to be made, or submit to the penalties therein contained"; but in our opinion such an agreement does not go far enough to pass title to property. See *Reynolds* v. *Royal Arcanum*, 192 Mass. 150, 157, 158. We take the law as established by our decisions to be that the property of an unincorporated voluntary association belongs to the entire membership if it is collected and held for the purposes of the association as a whole, *McFadden* v. *Murphy*, 149 Mass. 341, *Sabourin* v. *Lippe*, 195 Mass. 470, *Hill* v. *Rauhan Aarre*, 200 Mass. 438; see *Buswell* v. *Supreme Sitting of the Order of the Iron Hall*, 161 Mass. 224; but that it may belong exclusively to the subordinate association if it is collected solely from the members of the subordinate association and is held for the uses of the latter. *McCarty* v. *Cavanaugh*, 224 Mass. 521. *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415, 423. *Kane* v. *Shields*, *supra*. See *Idan Liitto Temperance Society* v. *Isakson*, 219 Mass. 95; *Curran* v. *O'Meara*, 211 Mass. 261. A decisive consideration is whether the property in question has been collected by the subordinate body as an administrative organ for the obtaining of property for the uses of the order as a whole; or whether it has been got together for the use of the unit which made the collection. When the association is incorporated, the inference of collection for the whole and of title in the corporation is very strong. Here there was no corporation; and nothing in the nature of a dedication of the property collected to any owner other than the voluntary association Court Gustaf Wasa which collected it, or to any use other than the benefit of the members of that subordinate body. As soon as the members of that body learned of the contemplated action by consent to which they would have subjected their funds to the control of the entire order acting through the supreme court, they divided the funds, no one dissenting. Title was never conveyed to the grand court, and no dedication to

the grand court was made. The plaintiffs are not entitled to the fund.

It follows that the decree must be reversed, and entry be made, bill dismissed with costs to the defendants.

*Ordered accordingly.*