WILLIAM D. SABOURIN & others *vs.* J. S. LIPPE & others.

Middlesex.    March 15, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Voluntary Association.   Court Samuel de Champlain, No. 49.   Order of Foresters.*

A vote of a voluntary association called the Court Samuel de Champlain, No. 49, which was subject to the constitution and general laws of the grand court of the Order of Foresters, to break all relations with the Order of Foresters and constitute itself an independent body to be known by a different name, was shown to be contrary to the constitution and by-laws of the grand court of the Order of Foresters which provided that "in no event can a subordinate court withdraw from this grand court except as provided" in certain articles which had no application to this case, and also to have been passed in violation of an article of the constitution and by-laws of the association itself, which provided that no change in the rules should be made without a previous notice in writing and a reading of the proposed amendment at a regular meeting, and the proposed amendment thereafter resting on the table through three regular meetings before being taken into consideration, none of these requirements having been complied with. *Held*, that the attempt at withdrawal from the order was of no effect and did not dissolve the court.

A voluntary association, which was a subordinate court of an order subject to the constitution and general laws of the grand court of the order, passed a vote to break all relations with the order and constitute itself an independent body, which was of no effect because in violation of the general laws of the grand court and also of the by-laws of the subordinate court itself. A general law of the grand

court provided that fifteen or more members, voting in the minority against their court disbanding or seceding from the order, should "be recognized by the executive council of the grand court as the same court to which they formerly belonged, under a new dispensation, bearing the same number." Under this general law the executive council of the grand court found that the vote mentioned above was illegal, and that fifteen of the members present at the meeting voted against secession. They voted to expel the seceders from the order, and that the members who voted not to secede be recognized as constituting the subordinate court by the same name as before, "retaining the charter and all authority conveyed by it and all power and authority conveyed to said expelled members by any dispensation heretofore existing be and hereby are abrogated and cancelled." On the same day the grand court granted a new dispensation to the loyal minority to hold the court under the old name, "being the same court to which they formerly belonged and which has never been legally dissolved." *Held*, that the recognition of the minority as constituting the court and granting them a new dispensation, if it was of any legal effect, did not dissolve the subordinate court but left it in continued existence.

If a majority of the members of a voluntary association, which is a subordinate court of an order subject to the constitution and general laws of the grand court of the order, pass a vote to break all relations with the order and constitute themselves an independent body, which is of no effect because in violation of the general laws of the grand court and also of the by-laws of the association itself, and if all those persons who were officers of the subordinate court withdraw from it and abandon their offices and transfer their support to the new organization which they have formed, to which they attempt to transfer all the valuable property of the association, the members who remain loyal, although a minority before the secession, may organize and elect officers of the association to take the place of those who have declared their abandonment of their membership in it, and the officers thus elected are entitled to receive the bank deposits and other property, the books of account and the books of record of the association.

Whether a majority of the members of a voluntary association, which is a subordinate court of an order subject to the constitution and general laws of the grand court of the order, who in violation of such general laws and of the by-laws of the association itself attempt to secede from the grand court and constitute themselves an independent body, can be expelled from the association by a vote of the executive council of the grand court, at a meeting of which the only notice was by publication, in two newspapers, respectively four days and two days before the meeting, and where some of the members whom the vote purported to expel had no notice or knowledge of the meeting until after it was held, here was not considered, the case being disposed of on other grounds.

BILL IN EQUITY, filed in the Superior Court on December 18, 1905, in behalf of the plaintiffs and all the members of Court Samuel de Champlain, No. 49, Foresters of America, against J. S. Lippe, Paul Vigeant, Arthur Lavoie, J. E. Lippe, Napoleon H. Roy and Wilbrod Bouthilette and against the same defendants as officers of and as representing all the members of L'Union Samuel de Champlain, another voluntary association,

and against the Central Savings Bank, the Washington Savings Institution and the Mechanics Savings Bank in Lowell.

The plaintiffs were alleged to be the officers of a voluntary association existing in Lowell, known as Court Samuel de Champlain, No. 49, Foresters of America, which is a subordinate court, working under the jurisdiction of the grand court of Massachusetts and both that court and the grand court are subject to the constitution and general laws of the Order of Foresters of America.

The Court Samuel de Champlain has a constitution and by-laws of its own of which Article I. reads as follows: "This court shall be known under the name of Court Samuel de Champlain, No. 49, Foresters of America. It shall possess all the privileges of a court of Foresters, having a legal dispensation from the grand court and it shall be a branch of the supreme court of the United States. Besides the constitution and by-laws which follow, the court shall be subject to the provision of the general laws of said grand court, which said general laws and their amendments which may be adopted in future as hereby recognized and adopted by this court and in case of conflict between the constitution of this court and the general laws of said grand court, said general laws shall prevail."

On November 7, 1905, at a regular meeting of Court Samuel de Champlain, at which only about one hundred and twenty-five out of five hundred and sixty-five members of the court were present, a majority, numbering one hundred, of those present, passed a resolution that the court break all relations with the Order of Foresters and constitute itself an independent body to be known as L'Union Samuel de Champlain, and voted that the court cease immediately to be a part of the order. This was done against the wishes of a minority of those present voting against the resolution and the vote.

On the following day, the defendants J. S. Lippe, Vigeant, Lavoie, J. E. Lippe, Roy and Bouthilette, all of whom were officers of the court at the time that the resolution and the vote were taken, caused the funds of the court to be transferred on the books of the respective defendant banks to L'Union Samuel de Champlain.

No notice was given to the members of the Court Samuel de Champlain, No. 49, before the meeting of November 7, that any vote was to be taken thereat upon the question of secession from the order; neither were the provisions of Article XXVI. of the constitution and by-laws of the court complied with which provided as follows: "No part of these rules shall be annulled or amended unless the court has been previously given notice of it in writing and this proposed amendment shall be read at a regular meeting and if such proposed amendment is received it shall rest on the table through two subsequent regular meetings before being taken into consideration and shall not be adopted except by a vote of two-thirds of the members present at a regular meeting."

On November 14, 1905, thirty-five members of the Court Samuel de Champlain, No. 49, petitioned the Grand Court of Massachusetts to be recognized as constituting that court, retaining the charter and all authority conveyed by it, fifteen of the petitioners representing that they had voted against secession at the meeting of November 7. The other petitioners were members who had not been present at that meeting.

At a meeting of the executive council of the grand court held on November 22, 1905, during a recess of the latter body, the council found that the vote taken at the meeting of November 7 was illegal " by reason of the fact that said meeting was not properly summonsed for said action and for other reasons." They likewise found that fifteen of the petitioners voted against secession and passed the following order: " That the petitioners and all other financial members of said court in good standing who have not voted to secede or disband be and hereby are recognized as constituting said Court Samuel de Champlain, No. 49, retaining the charter and all authority conveyed by it and all power and authority conveyed to said expelled members by any dispensations heretofore existing be and hereby are abrogated and cancelled." They also passed an order expelling the seceders from the order.

On the same date the grand court granted a new dispensation to the plaintiffs to hold the court. This dispensation was in the form of a grant of authority to them to hold a court of forestry under the name and title of Court Samuel de Cham-

plain, No. 49, " being the same court to which they formerly belonged and which has never been legally dissolved."

At a meeting which was held on November 28, 1905, by the persons or some of them, who claimed to be the old court acting under the new dispensation, the plaintiffs were elected to their respective offices in the court to fill the vacancies alleged to have been caused by the secession and expulsion of the several defendants from the court. About one hundred persons who were members of the court on November 7, 1905, and who did not vote to secede signified their intention of remaining with the old court.

Four hundred and thirty-four who were members of the court on November 7, 1905, joined L'Union Samuel de Champlain.

At the time of the filing of the bill the funds of the court still stood in the name of L'Union Samuel de Champlain on the books of the defendant banks and the latter association had possession of the books, records and other documents of the court, having refused upon demand to deliver either the funds or the books to the plaintiffs.

The bill sought an order compelling the defendants to deliver over the funds and books of the court, and was based upon the contention of the plaintiffs as set forth therein that the vote of secession, so called, passed at the meeting of November 7, 1905, did not dissolve the court, but that the court still existed and was represented by the plaintiffs.

In the Superior Court the case was referred to Harry A. Brown, Esquire, as special master. In his first report the master set forth the facts which are stated above. The defendants filed an exception to this report because the master did not find that the new dispensation was obtained by fraud of the plaintiffs. This exception was overruled by *Lawton*, J.

Subsequently, by agreement of the parties, the case was recommitted to the master " for further hearing and finding on the question of the liability of the defendants."

The master filed a supplementary report in which he found " That the vote of secession so called, passed at the meeting of Court Samuel de Champlain, No. 49, November 7, 1905, did not dissolve said court or carry it, as an association, out of the Order of Foresters or into the new association called L'Union

Samuel de Champlain, but said court still exists, is represented by the plaintiffs, and owns and is entitled to the three deposits in the defendant banks described in the plaintiffs' bill of complaint. . . . Said court also owns and is entitled to certain books of record, books of account and documents which it owned on said November 7, 1905." He also found that the defendants, J. S. Lippe, Vigeant, Lavoie, Roy and Bouthilette wrongfully assigned the deposits and procured their transfer to L'Union Samuel de Champlain, which by its officers received them, and that the latter association was in possession of and wrongfully was withholding from the plaintiffs the books and records of the court.

The defendants filed exceptions to the supplementary report, of which the first four were to the findings of the master stated above. The remainder related to an alleged refusal on the part of the master to make certain subsidiary findings and rulings requested by the defendants. *Lawton, J.* made a final decree overruling the defendants' exceptions and confirming the master's supplementary report, and ordering the defendants to deliver and transfer the funds and books of Court Samuel de Champlain, No. 49, to the plaintiffs, with costs against the defendants, excepting the defendant banks. The defendants other than the defendant banks appealed.

The defendants' exceptions to the master's supplementary report referred to above and mentioned in the opinion were as follows:

1. Because the master finds as set forth in the first paragraph of his supplementary report " that the vote of secession, so called, passed at the meeting of Court Samuel de Champlain No. 49, November 7, 1905, did not dissolve said court or carry it, as an association, out of the Order of Foresters or into the new association called L'Union Samuel de Champlain, but said court still exists, is represented by the plaintiffs, and owns and is entitled to the three deposits in the defendant banks described in the plaintiffs' bill of complaint, to wit: the sum of $1375.63 in the defendant Central Savings Bank, the sum of $638.25 in the defendant Washington Savings Institution and the sum of $464.22 in the defendant Mechanics Savings Bank in Lowell, together with the dividends accrued on said deposits. Said court also

owns and is entitled to certain books of record, books of account and documents which it owned on said November 7, 1905," contrary to the objection of the defendants and because such finding was not supported by the facts found by the master in the case.

2. Because the master finds " that the defendants J. S. Lippe, Vigeant, Lavoie, N. H. Roy and Bouthilette, being then, or theretofore members of said court, on November 8, 1905, in pursuance of a common purpose, in effecting which they all took part, have wrongfully and without right or authority therefor, in derogation of the rights of the plaintiffs thereto, but without any fraudulent intention and under a claim of right, assigned said deposits and procured the transfer of the same to said L'Union Samuel de Champlain, which last named association, by their officers and agents, received the same," contrary to the objection of the defendants and because said finding was not justified by the facts found by the master.

3. Because the master finds " that the defendant banks transferred said deposits to said union in disregard of the terms under which said deposits were first made," contrary to the objection of the defendants, and because said finding was not justified by the facts found by the master.

4. Because the master finds " that the defendants are in possession of said books of record, books of account and documents belonging to the plaintiffs as aforesaid, and are withholding the same from the plaintiffs wrongfully," contrary to the objection of the defendants and because said finding was not justified by the facts found by the master.

And the defendants except because the master did not find as requested by the defendants that

" 1. No notice of any kind was given to the Court Samuel de Champlain, No. 49, Foresters of America for the meeting of the executive council of the grand court of Massachusetts Foresters of America on the 22nd day of November, 1905, at two o'clock P. M. at which meeting action was taken with reference to the proceedings at the meeting of November 7th, 1905," said finding being justified and required by the other findings of the master in the case.

Because the master did not find as requested by the defendants that

" 2. There is no provision in any of the laws or by-laws of the order by force of which upon the issuance of a new dispensation to members who have voted against the secession of their court as provided in article 28 constitution and general laws of the Foresters of America the property of the court which has seceded or been dissolved shall become the property of the court thus newly constituted under the same number by new dispensation," said finding being justified and required by the other findings of the master in the case.

Because the master did not find as requested by the defendants that

" 3. The findings of the executive council and the orders passed by them on the 22nd day of November, 1905, were not authorized by any by-law rule or regulation of the Order of Foresters of America nor justified by the facts of the case," said finding being justified and required by the other findings of the master in the case.

Because the master did not find as requested by the defendants that

" 5. Thirteen members only in good standing having voted against the secession of Court Samuel de Champlain, No. 49, on November 7th, 1905, I find that there is no provision in the rules, regulations or by-laws of the Order of Foresters of America giving the executive council authority upon the petition of those thirteen to issue to them in conjunction with others a new dispensation for the continuance of the old court under the same name and number and I find that such action is prohibited by the rules and regulations of the order," said finding being justified and required by the other findings of the master in the case.

Because the master did not find as requested by the defendants that

" 7. I find no provision in the rules, regulations or by-laws of the Order of Foresters of America by which Gallagher as grand secretary had any right or authority to inspect or examine any list, papers or other documents in the possession of Court Samuel de Champlain, No. 49, nor in the possession of any of its officers. That the only provision with respect thereto is found in article 7 section 2 grand court of Massachusetts which provided that each

subordinate court shall be under the surveillance of a deputy grand chief ranger of the grand court and that he shall have the right 'at any time whatever' to inspect the books and documents of a subordinate court. That no demand for the inspection of the lists in the possession of Court Samuel de Champlain, No. 49, was made by the deputy grand chief ranger," said finding being justified and required by the other findings of the master in the case.

The case was submitted on briefs.

*J. H. Guillet & W. H. Bent*, for the defendants.

*A. S. Howard*, for the plaintiffs.

KNOWLTON, C. J. This case comes before us on an appeal from a final decree in favor of the plaintiffs. The questions arise on exceptions of the defendants, other than the savings banks and savings institution, to the master's report. These excepting defendants are hereinafter called the defendants. The first question is whether the master was wrong in finding that the vote of secession, so called, passed at the meeting of Court Samuel de Champlain, No. 49, November 19, 1905, did not dissolve that court, or carry it as an association out of the Order of Foresters. For different reasons the vote was ineffectual to dissolve the court or deprive it of its legal rights. In the first place it is provided, in Article VI., section 7 of the constitution and by-laws of the grand court, that " in no event can a subordinate court withdraw from this grand court, except as provided in Articles XXXI. and XLII., General Laws." There is a similar provision in the constitution and general laws of the order. The exception referred to has no relation to the present case. Such an attempt at withdrawal was in direct violation of the laws by which the order was governed. If it had been in the power of this court to amend its laws in such a way as to legally sever its connection with the Order of Foresters, it could not do it without previous notice to the members that such a proposal was to be acted upon. Article XXVI. of the subordinate court itself declares that " no part of these rules shall be annulled or amended unless the court has been previously given notice of it in writing and this proposed amendment shall be read at a regular meeting and if such proposed amendment is received it shall rest on the table through three subsequent regular meet-

ings before being taken into consideration and shall not be adopted except by a vote of two-thirds of the members present at a regular meeting." There was no attempt to observe this rule. There was no notice, in fact, to the members that such a subject was to be acted upon. The only notice of anything special to be considered at this meeting was a statement that there would be a discussion of the question, "What action the court shall take on the subject of the resolutions adopted by the convention of the Foresters of America at Buffalo, prohibiting in the future the use of the French language in the new courts of the order." This was far from a suggestion that the court would vote on secession from the order. Moreover, some of the members did not receive even this notice, which was given only by publication in two newspapers a short time before the meeting. The attempt at withdrawal did not dissolve the court. *McFadden* v. *Murphy*, 149 Mass. 341. *Kane* v. *Shields*, 167 Mass. 392. *Karcher* v. *Knights of Honor*, 137 Mass. 368, 372. *Torrey* v. *Baker*, 1 Allen, 121. *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415, 422. *Wiggin* v. *Free Will Baptist Church*, 8 Met. 301, 312. *Stebbins* v. *Merritt*, 10 Cush. 27, 32. *Saint Mary's Association* v. *Lynch*, 64 N. H. 213. *Schiller Commandery* v. *Jaennichen*, 116 Mich. 129. *Altman* v. *Benz*, 27 N. J. Eq. 331.

The defendants contend that the court was dissolved by the action of the grand court in recognizing the plaintiffs as still constituting the court, and granting them a new dispensation. There is a grave question how far, if at all, this action was of legal effect for any purpose. But, if it is given effect, we are of opinion that it did not dissolve the subordinate court, but left it in continued existence. Under Article XXXIX. of the laws of the grand court fifteen or more members, voting in the minority against their court disbanding or seceding from the order, were to "be recognized by the executive council of the grand court as the same court to which they formerly belonged, under a new dispensation, bearing the same number," etc. Such recognition of the possible secession of a court as appears in this article is not to be taken as legalizing secession, but as admitting that the members may withdraw in fact and divide their money, in violation of the laws of the order. Under other provisions fif-

teen members are required to constitute a court, and this article provides, in substance, that if there are fifteen members who remain constantly loyal to the order, they shall be recognized as still constituting the court, and a formal dispensation to that effect shall be issued. The new dispensation granted by the grand court did not purport to dissolve the subordinate court, but it was issued to members of that court under the name and title of "Court Samuel de Champlain, No. 49, being the same court to which they formerly belonged, and which has never been legally dissolved." The vote on which the dispensation was founded is that these members "be and hereby are recognized as constituting the said Court Samuel de Champlain, No. 49, retaining the charter and all authority conveyed by it and all power and authority conveyed to said expelled members by any dispensation heretofore existing be and hereby are abrogated and cancelled." The cancellation and abrogation of power and authority were only of that which was personal to other " persons to constitute and hold said court," having reference to the expulsion, or attempted expulsion, of other members of the court. We are of opinion that the original subordinate court continued its existence after the issuing of the new dispensation.

The next question is whether there was error of the master in finding that this court is represented by the plaintiffs as its officers. All those who were officers of the court on November 7, 1905, had withdrawn, and had abandoned their offices, and transferred their support to a similar new organization to which they had attempted to transfer all the valuable property of the court. We think the members who remained loyal might organize, and elect officers to take the place of those who had done all in their power to destroy the court as an existing organization, and had declared in the most emphatic terms their abandonment of their membership in it. A meeting was held at which these plaintiffs were elected officers, and about one hundred members who did not vote to secede have recognized the present officers by paying dues to the newly elected financial secretary.

The defendants have held meetings and maintained themselves as a separate, independent association known as L'Union Samuel de Champlain. So far as appears there has been no attempt by others than the plaintiffs, since their election, to act as officers

of the court.   Even without the recognition of the grand court, we are of opinion that the plaintiffs properly represent the court, as officers, in bringing this suit.   Inasmuch as the grand court has general supervisory control of the subordinate courts, their recognition of this court with its present active members is a fact of some significance, even if the action of the council was not binding upon the expelled members.   The defendants' first exception to the supplemental report was rightly overruled.

It follows that the second, third and fourth exceptions, which relate to the transfer of the property of the court, were also rightly overruled.

In the view which we have taken of the law and facts, the defendants' first, second, third, fifth and seventh exceptions to the refusal of the master to make certain findings requested by them are immaterial to any of the issues of the case as now presented.   None of the rights of the plaintiffs in the present suit are made to depend on the action of the council of the grand court, to which these requests relate.   We leave undecided the question whether this action was valid either wholly or in part. There are many cases which hold that members of an association like this cannot be expelled without notice, and an opportunity of being heard.   See note to *Ryan* v. *Cudahy*, 49 L. R. A. 353, 362, 363, *et seq.*, with citations.   The only notice of the meeting at which this action was taken was by a publication in two newspapers, one of which was four days, and the other two days, before the meeting.   Some of the members had no notice or knowledge of the meeting until after it had been held.   There are other facts bearing upon the effect of the action taken at this meeting which we need not now consider.

*Decree affirmed.*