LA RESPETABLE LOGIA ADELPHIA NÚM. 1, ETC., representada por su VENERABLE MAESTRO DR. FRANCISCO LLAVAT, demandante y apelada, *v.* LA RESPETABLE LOGIA ADELPHIA NUM. 1, ETC., representada por su VENERABLE MAESTRO BARTOLO RIVERA PÉREZ, demandada y apelante.

Núm. 10241.—*Sometido:* Diciembre 1, 1950. *Resuelto:* Mayo 4, 1951.

490

*Rafael Soltero Peralta,* abogado de la apelante; *Enrique Báez García,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Este recurso de sentencia declaratoria trata de una controversia entre dos grupos. Cada grúpo alega (1) que tiene derecho a usar el nombre de Logia Adelphia Núm. 1, y (2)

que es el dueño de un edificio y otros bienes radicados en Mayagüez pertenecientes a dicha Logia Masónica. Luego de un juicio en los méritos, la corte de distrito dictó sentencia a favor del grupo demandante y el grupo demandado ha apelado.

Para comprender los errores que señala la apelante se impone una relación de los hechos esenciales que no están en controversia aquí. La Gran Logia Soberana de Libres y Aceptados Masones de Puerto Rico es una confederación de logias subordinadas o afiliadas organizada en 1885. La Logia Adelphia Núm. 1 existía antes de la organización de la Gran Logia y se unió a la Gran Logia como su primera afiliada en 1885. El 31 de julio de 1913 la Logia Adelphia fué inscrita como una asociación con fines no pecuniarios bajo la Ley núm. 22, Leyes de Puerto Rico, 1911 (pág. 79). Tanto antes como después de dicha fecha la Logia ha seguido funcionando con la denominación "Respetable Logia Adelphia Núm. 1 constituída en Mayagüez, Puerto Rico, bajo la jurisdicción de la Muy Respetable Gran Logia Soberana de Puerto Rico."

El artículo 1 del Reglamento Interior de la Logia Adelphia, promulgado en 1919, prescribe como sigue: "La Respetable Logia Adelphia Núm. 1 es una asociación masónica y de beneficencia, domiciliada en la ciudad de Mayagüez, Puerto Rico, bajo la jurisdicción de la Muy Respetable Gran Logia Soberana de Puerto Rico y a cuyas prescripciones constitucionales se somete . . ." En esta forma la Logia Adelphia quedó sujeta (1) a su propia carta patente y a su reglamento, (2) a la Constitución de la Gran Logia, (3) a los Estatutos de la Gran Logia, y (4) a los Reglamentos, Leyes y Decretos de la Gran Logia.

En 1912 se adquirió en Mayagüez un solar que fué inscrito en el Registro de la Propiedad a nombre de la Logia Adelphia Núm. 1 "constituída bajo la jurisdicción de la Muy Respetable Logia Soberana de Puerto Rico." En 1912 la Logia Adelphia construyó un edificio sobre este solar. Desde

dicha fecha el edificio ha sido dedicado a templo masónico de la Logia Adelphia. Ha sido equipado dicho edificio con todo el mobiliario necesario para la labor masónica de la Logia y todos sus archivos y libros están allí guardados.

La carta patente y el reglamento de la Logia Adelphia proveen que sus sesiones o tenidas ordinarias se llevarán a efecto semanalmente la noche del miércoles. El artículo 6 del reglamento también dispone que "además, celebrará en las fechas que al efecto señalare, sesiones extraordinarias, de acuerdo con la necesidad y urgencia del caso."

En la sesión ordinaria de la Logia Adelphia celebrada el 12 de mayo de 1948, una mayoría de los miembros presentes, encabezada por el Venerable Maestro Bartolo Rivera y otros dignatarios de la misma, aprobó una resolución en la que se pretendía desligar a la Logia Adelphia de la jurisdicción de la Gran Logia y se declaraba roto y disuelto todo nexo o relación entre ella y la Gran Logia. En dicha sesión estuvieron presentes el Venerable Maestro y 29 miembros. El Venerable Maestro y 27 miembros votaron a favor de la resolución y 2 miembros le votaron en contra. La referida resolución fué presentada la misma noche en que se aprobó sin notificación previa a todos los miembros. Antes de que la misma fuera aprobada, se derrotó una proposición para que se citase a la logia en pleno a sesión extraordinaria con el fin de resolver el asunto.

El 19 de mayo de 1948, 16 de los miembros que votaron a favor de la referida resolución, juntos con 4 de los otros miembros que no participaron en la sesión anterior, acordaron por unanimidad, actuando como la Logia Adelphia, ingresar en la Gran Oriente Nacional de Puerto Rico, una confederación de logias masónicas recientemente organizada en la isla. Esta facción de la Logia Adelphia que supuestamente se desligó, como la Logia Adelphia, de la Gran Logia Soberana para unirse a la Gran Oriente Nacional, es la demandada en el presente caso. Desde dicha fecha ha venido usando el nombre de "Logia Adelphia Núm. 1" agregándole

la frase "bajo la jurisdicción del Gran Oriente Nacional de Puerto Rico", sustituída luego por "constituyente del Gran Oriente Nacional de Puerto Rico". Desde la referida fecha el grupo demandado ha venido también reteniendo, ocupando y usando el edificio, archivos y documentos pertenecientes a la Logia Adelphia.

El 16 de mayo de 1948, 66 miembros de la Logia Adelphia original, enterados del acuerdo de separación del 12 de mayo de 1948, acudieron en alzada ante la Gran Logia, invocando el artículo 160 de los Estatutos, en solicitud de que se revisara y anulara el mismo. De dicha apelación fué debidamente notificado el Venerable Maestro, Bartolo Rivera. Vista la apelación, el 21 de mayo de 1948 José G. Bloise, Gran Maestro de la Gran Logia, expidió el Decreto núm. 4 declarando "nula e inefectiva" la resolución de separación. En una sesión extraordinaria celebrada el 23 de mayo de 1948, la Gran Logia expulsó a los dignatarios y demás miembros que votaron el acuerdo de separación "como miembros de la orden y por consiguiente como miembros de la Logia Adelphia". El 28 de mayo el Gran Maestro Bloise expidió el Decreto núm. 5 declarando que los puestos de dignatarios de la Logia Adelphia estaban vacantes desde el 13 de mayo de 1948, y ordenando a la Logia Adelphia que citara a todos los miembros a la mayor brevedad posible para celebrar elecciones parciales a tenor con el artículo 114 de los Estatutos. De conformidad con este Decreto, y previa convocatoria, 40 miembros de la Logia Adelphia se reunieron en el templo de la "Logia Porvenir de Puerto Rico, Núm. 88" en Mayagüez, el 2 de junio de 1948, y allí procedieron a elegir los dignatarios que sustituirían a los que fueron expulsados. El Dr. Francisco Llavat fué electo Venerable Maestro y éste y los otros que fueron electos dignatarios fueron reconocidos e instalados por el representante de la Gran Logia.

Esta facción, que permaneció leal a la Gran Logia y que es la demandante en este caso, ha venido celebrando sus sesio-

nes en el edificio de la Logia Porvenir por cortesía de ésta y mediante dispensa de la Gran Logia. Ha venido funcionando con el mismo nombre y en la misma forma en que la Logia Adelphia funcionó antes del 12 de mayo de 1948, pero sin acceso al edificio y demás propiedades que la demandada retiene y usa.

Luego de declarar probados los anteriores hechos, la corte de distrito manifestó en su opinión que la controversia se reducía al problema de si la resolución del 12 de mayo de 1948 separándose de la Gran Logia era válida. La corte inferior discutió entonces la jurisdicción de la corte y el procedimiento, resolviendo que podía pasar sobre los méritos del caso y que el recurso de sentencia declaratoria era el remedio adecuado.

En los méritos, la corte de distrito resolvió que ni en la carta patente ni en el reglamento de la Logia Adelphia ni en la Constitución, Estatutos, Reglamento y Leyes de la Gran Logia había nada que autorizara a la Logia Adelphia a separarse de la Gran Logia. Según la corte inferior, una logia afiliada podía separarse de la Gran Logia solamente por disolución a tenor con el artículo 12, pár. II de la Constitución. Dicha disposición exige el voto de 2/3 partes de los miembros presentes en una sesión extraordinaria convocada a dicho fin.[1] La resolución de separación del 12 de mayo de 1948 no fué aprobada en una sesión extraordinaria convocada a tales fines. La corte inferior por consiguiente resolvió que aun suponiendo que el artículo 12, pár. II, auto-

[1] El artículo 12, pár. II, lee como sigue:
"Sólo pueden disolverse las logias:
"1. . . . . . . .
"II. Por entrega voluntaria de la Carta Patente, acordada por las dos terceras partes de los miembros numerarios presentes a la sesión extraordinaria convocada al efecto. La Carta Patente se remitirá al Gran Maestro, o a su Delegado, pudiendo el primero entregarla a siete o más Maestros en el goce de sus derechos masónicos, siempre que ellos la pidan dentro de sesenta días a partir de dicha fecha y que, a juicio del Gran Maestro reunan todas las condiciones necesarias para la dirección y gobierno de la logia."

rizase tanto la separación como la disolución, la resolución de que se trata no dió fin a la jurisdicción de la Gran Logia sobre la Logia Adelphia.

La corte inferior dice entonces que "La demandada no discute el derecho de la Gran Logia para expulsar a sus miembros en casos apropiados ni el procedimiento seguido en el caso de autos así como la forma en que se eligió la nueva directiva el día 2 de junio de 1948 limitándose a negarle jurisdicción a la Gran Logia sobre la Logia Adelphia después del acuerdo de 12 de mayo de 1948. Habiendo llegado la corte a la conclusión de que dicho acuerdo fué nulo e ineficaz se impone la conclusión de que todos los miembros de la Logia Adelphia continuaron después de dicho día bajo la jurisdicción de la Gran Logia y sujetos a las medidas disciplinarias correspondientes. La actuación de la Gran Logia sobre expulsión y elección de nueva directiva, en ausencia de una demostración en contrario, tiene la presunción de corrección y regularidad. Artículo 102, párrafos 15, 19, 20 y 32 de la Ley de Evidencia." La corte sigue diciendo que la expulsión no era necesaria, ya que aquéllos que aprobaron la resolución del 12 de mayo de 1948 se colocaron por sí mismos fuera de la Logia Adelphia. Y una vez que los puestos de dignatarios quedaron en esta forma automáticamente vacantes, la elección de los nuevos dignatarios era una cuestión de rutina.

■ ■ Antes de emprender la discusión de los errores, creemos conveniente indicar que ninguna de las partes impugna el hecho de que las cortes pueden conocer de pleitos que envuelven los asuntos internos de una asociación voluntaria, si como aquí ocurre están envueltos derechos de propiedad. *Logia Adelphia* v. *Gran Logia Soberana*, 41 D.P.R. 436; Wrightington, *Unincorporated Associations and Business Trusts*, pág. 320. Para una regla aun más liberal en cuanto a la protección de los derechos de los miembros de una asociación como ésta, véanse *Berrien* v. *Pollitzer*, 165 F.2d 21

(C.A., D.C., 1947); Anotación, 175 A.L.R. 438, 508 *et seq.*
*Cf.* Nota, *Judicial Intervention in Internal Affairs of Labor
Unions,* 14 U. of Chi. L.Rev. 479.

█ █ El primer señalamiento es que la corte inferior
cometió error al resolver que la Logia Adelphia "estaba im-
pedida de retirarse de la confederación de la Gran Logia
Soberana de Puerto Rico y que por tal motivo, el acuerdo
del 12 de mayo de 1948 fué un acto *ultra vires,* ineficaz y
carente de validez legal." El segundo es al efecto de que
la corte de distrito cometió error al resolver que, en el su-
puesto de que la Logia Adelphia pudiese separarse de la
Gran Logia sin disolverse, tal acuerdo no podía ser tomado
en una sesión ordinaria, sino que requeriría la celebración
de una sesión extraordinaria convocada a tal fin. Conside-
raremos estos dos errores conjuntamente.

La apelante sostiene que el *status* de un masón es volun-
tario, y que ningún miembro individual de una logia puede
ser obligado contra su voluntad a seguir siendo miembro de
la misma. Sostuvimos esta doctrina cuando dijimos en el
caso de *Luce & Co.* v. *Junta Relaciones Trabajo,* 71 D.P.R.
360, 374, que "Una asociación voluntaria no puede exigir
válidamente que será requisito indispensable para retirarse
de la misma el que la renuncia sea aceptada." (²) Pero aquí
la controversia no es si ciertos individuos pueden o no sepa-
rarse de una logia específica. Más bien la cuestión es (*a*)
si una logia subordinada puede dar por terminada su afilia-
ción a la Gran Logia; y (*b*) si lo puede hacer, qué procedi-
miento se requiere para hacerlo.

La constitución y reglamento de una asociación privada
son un contrato entre los miembros o entre la asociación y
sus miembros. En igual forma, la relación entre una logia
afiliada y la logia madre es de naturaleza contractual. *Order
of Travellers* v. *Wolfe,* 331 U. S. 586, 605; *Polin* v. *Kaplan,*

--------

(²) El artículo 1, pár. XIX de la Constitución Masónica le reserva
al individuo Masón el derecho a separarse de una logia.

257 N.Y. 277 (1931) ; Anotación, 94 A.L.R. 639; *Cromwell* v. *Morrin*, 91 N.Y.S.2d 176, 179 (S.Ct., 1949) ; *Ray* v. *Brotherhood of Railroad Trainmen*, 44 P.2d 787 (Wash., 1935) ; *Union Benev. Soc. No. 8* v. *Martin*, 67 S.W. 38 (Ky., 1902) ; Wrightington, supra, sec. 56, pág. 310; 1 Williston, *Contracts*, pág. 80; Nota, 63 Harv.L.Rev. 1413, 1414. Véanse Petro, *The UE–CIO Controversy in the Courts, Labor Law Journal*, marzo, 1951, pág. 163; Nota, 34 Minn.L.Rev. 357, 358; *Clark* v. *Fitzgerald*, 93 N.Y.S. 2d 768 (S.Ct., 1949). Como ya se ha indicado, el artículo 1 del reglamento de la Logia Adelphia dispone que ésta estará sujeta a la Constitución, a los Estatutos y al Reglamento de la Gran Logia. En tal virtud, la separación de la Logia Adelphia de la Gran Logia debe hacerse de conformidad con éstos, a menos que los mismos contengan algo contrario a la política pública. Véase el artículo 1207, Código Civil, ed. de 1930.

El artículo 8 del reglamento de la Logia Adelphia provee que "Todos los miembros de la Logia tienen deberes y derechos que expresamente les señalan la Constitución, los Estatutos y demás Leyes de la Gran Logia Soberana de Puerto Rico . . . ". La Constitución de la Gran Logia dispone en su artículo 1, pár. VIII que "La Gran Logia gobierna soberana y exclusivamente la asociación de la Masonería en su jurisdicción, y está formada por la confederación de las logias", y en el pár. X dice que las logias administrarán "sus negocios . . . con arreglo a las leyes de la Gran Logia . . . ". El artículo 9 prescribe que "Las Logias pueden tomar acuerdo sobre cualquier asunto de su competencia y administración de sus intereses, siempre que no esté en oposición a algún precepto estatutario o constitucional . . . ". El artículo 13 provee que entre los "deberes fundamentales de las logias" está el deber de "cumplir fiel y estrictamente los . . . Constitución, Estatutos y demás Leyes Generales que la Gran Logia promulgue . . .".

El artículo 128 de los Estatutos provee que "en ningún caso" se permitirá en las sesiones de las logias "la discusión de proposiciones contrarias a la soberanía . . . de la Gran Logia . . . ". Y el artículo 160 de los Estatutos establece el derecho de apelación ante el Gran Maestro y de éste a la Gran Logia contra cualquier acuerdo de una de las logias. (³)

Es innecesario que vayamos tan lejos resolviendo, como resolvió la corte de distrito, que las disposiciones arriba transcritas hacen de una logia subordinada "más bien una agente de la Logia principal que una entidad independiente". En igual forma, es innecesario resolver que no existe derecho de separación de la logia madre por una logia afiliada excepto por disolución. A los fines de este caso basta decir que suponiendo que exista el derecho de separación, ésta debe efectuarse a tenor con la Constitución y los Estatutos de la Gran Logia.

En los documentos que definen la relación existente entre la Logia Adelphia y la Gran Logia no hay disposición alguna en cuanto a la separación propiamente dicha. Sin embargo, esto no quiere decir, como sostiene la apelante, que el derecho de separación pueda ejercitarse mediante la libre discreción de una mayoría de los miembros de la Logia Adelphia que estuvieron presentes en una sesión ordinaria que se celebró sin que se notificara previamente a todos los miembros que el asunto de la separación sería considerado en dicha sesión. Resolverlo así sería hacer caso omiso de las disposiciones antes citadas de la Constitución y de los Estatutos de la Gran Logia y del reglamento de la Logia Adelphia que colocan a ésta en una posición subordinada a

---

(³) El artículo 160 prescribe: "Lo preceptuado en el artículo anterior no obsta para que cualquiera de los presentes pueda protestar contra todo acuerdo. El que así lo hiciere podrá acudir en alzada al Gran Maestro, y contra la resolución de éste, a la Gran Logia . . . El hermano que no haya estado presente en una deliberación o acuerdo, tiene libres los mismos recursos, sin necesidad de protestar en Logia."

la primera. Más importante aún, perjudicaría los derechos de la abrumadura mayoría de los miembros que estaban ausentes y no tuvieron notificación al efecto de que se discutiría en una sesión ordinaria el asunto de la separación. Convenimos con la corte inferior en que "No parece justo ni equitativo que los destinos de la Logia Adelphia y los derechos de sus ciento treinta y seis (136) miembros puedan quedar sometidos a la voluntad de cuatro (4) miembros que en un momento dado pueden constituir la mayoría de un quórum de siete (7) maestros masones autorizados por el artículo 117 de los Estatutos para constituir una sesión o tenida ordinaria." *Sabourin* v. *Lippe*, 81 N.E. 282 (Mass., 1907); *Suffridge* v. *O'Grady*, 84 N.Y.S.2d 211, 216-17 (S.Ct., 1948), y casos citados. *Cf.* Nota, 63 Harv.L.Rev. 1413, 1414, y casos citados en las notas 10 y 11.

█ Visto lo anterior, la única disposición en que la apelante podría posiblemente descansar en cuanto a la cuestión de separación es el artículo 12, pár. II de la Constitución de la Gran Logia. Véase la nota 1. Como ya se ha indicado, el pár. II está redactado en términos de disolución más bien que de separación. Pero suponiendo sin decidirlo que este párrafo sea aplicable e interpretándolo lo más liberalmente posible a favor de la apelante, a lo sumo permitiría a la Logia Adelphia separarse de la Gran Logia mediante el voto de ⅔ partes de sus miembros en una sesión extraordinaria convocada a dicho fin. *Cf.* Artículo 11 de la Ley núm. 22 de 1911. Y aquí no ocurrió eso.

█ No podemos convenir con la apelante en que bajo otras disposiciones del reglamento de la Logia Adelphia y de la Constitución y Estatutos de la Gran Logia, la primera podía separarse de la segunda por una mayoría de sus miembros en una sesión ordinaria sin notificación previa. La apelante descansa en el artículo 116 de los Estatutos que permite "toda clase de trabajos masónicos" en las sesiones ordinarias, y en el artículo 125 que contiene el "orden de

los trabajos" incluyendo las "Proposiciones". Arguye que estos artículos demuestran que cualquier proposición puede ser considerada en una sesión ordinaria excepto aquéllas que expresamente tienen que considerarse en sesiones extraordinarias; es decir, las elecciones y la disolución, a tenor con el artículo 12, pár. II. Creemos que lo anteriormente dicho dispone de esta contención.

La apelante también llama la atención hacia el artículo 48 del reglamento de la Logia Adelphia y los artículos 141 y 142 de los Estatutos de la Gran Logia, que estaban disponibles para los miembros del grupo demandante si éstos deseaban revocar la resolución del 12 de mayo de 1948. Suponemos que se pudo hacer esto. Pero en igual forma, la demandante también tenía derecho a usar el método alternativo de apelación al Gran Maestro de conformidad con el artículo 160 de los Estatutos. Sostener, como lo hace la apelante, que el artículo 160 no era aplicable porque la Logia Adelphia ya estaba fuera de la jurisdicción de la Gran Logia bajo su resolución del 12 de mayo, equivale a poner la carreta delante de los bueyes. La cuestión de si la resolución del 12 de mayo había sido debidamente aprobada era precisamente lo que estaba en apelación.

No es necesario detenernos a determinar cuál hubiera sido el efecto de la apelación al Gran Maestro de la resolución del 12 de mayo y de resolver éste que dicha resolución era nula e ineficaz, si la resolución hubiera sido aprobada de conformidad con el reglamento de la Logia Adelphia y con la Constitución y Estatutos de la Gran Logia. Como ya se ha visto la resolución fué enteramente nula; el Decreto Núm. 4 del Gran Maestro fué en efecto una mera declaración de dicha nulidad.

Cuando, como aquí ocurre, dos grupos rivales alegan ser una organización que es dueña de bienes, las cortes de ordinario han concedido éstos a aquel grupo que ha funcionado dentro de la estructura prescrita por la constitución

y reglamentos que constituyen el contrato que gobierna la organización. *Suffridge* v. *O'Grady*, supra; *Di Silvestro* v. *Sons of Italy Grand Lodge*, 222 N.Y.S. 203, 215–16 (S.Ct., 1927; *Sabourin* v. *Lippe*, supra; *Schriner* v. *Sachs*, 98 Atl. 724, 726 (Pa., 1916); *Union Benev. Soc. No. 8* v. *Martin*, supra; *Gorman* v. *O'Conner*, 26 Atl. 379 (Pa., 1893); *McFadden* v. *Murphy*, 21 N.E. 868 (Mass., 1889); *Lumber and Sawmill, Etc.* v. *International W. W., Etc.*, 85 P.2d 1099 (Wash., 1938); Nota, 47 L.R.A. (N.S.) 927; Nota, *The Legal Consequences of Labor Union Schisms*, 63 Harv.L. Rev. 1413, 1414; Nota, *Labor Union Funds and Secessionists*, 33 Ill.L.Rev. 977; Nota, 33 Minn.L.Rev. 156, 166. *Cf.* Petro, *The UE–CIO Controversy in the Courts*, supra; Anotación, 131 A.L.R. 902. Bajo dicha regla la corte inferior no cometió error al dictar una sentencia declaratoria al efecto de que los bienes aquí envueltos pertenecían al grupo demandante.

■■ La apelante sostiene también que aun cuando la Constitución o Estatutos de una organización masónica confieran poder a la Gran Logia para disolver una logia, anular su carta patente, o confiscar sus bienes, estas disposiciones son nulas con referencia a una logia incorporada bajo las leyes de un Estado. Por consiguiente, según la apelante, una logia incorporada continúa existiendo, fuera de la confederación, reteniendo el título de sus bienes, aun cuando su carta patente sea revocada y la logia madre decida confiscar sus bienes a tenor con la Constitución de la misma.

Pero la Gran Logia no ha intentado revocar la carta patente de la Logia Adelphia. Tampoco ha confiscado sus bienes a favor de la Gran Logia. La Logia Adelphia continúa reteniendo su propiedad y su existencia corporativa. La única cuestión es qué grupo constituye legalmente la Logia Adelphia. Esto, a su vez, depende de si, bajo su "contrato" con la Gran Logia, la Logia Adelphia válidamente se retiró

de dicha confederación como logia afiliada a la misma. Las autoridades citadas por la apelante sobre este punto son por tanto enteramente inaplicables.(⁴)

En verdad, lo que ya hemos expuesto demuestra que el *status* de la Logia Adelphia como entidad jurídica nada tiene que ver con este caso. Es decir, ninguna de las partes descansa en actuaciones específicas que supuestamente se realizaron o que supuestamente no se realizaron bajo la Ley núm. 22 de 1911. Por el contrario, la única cuestión es si el grupo demandado tomó los pasos adecuados que resultaron en una separación válida de la Logia Adelphia de la Gran Logia. Y, como ya hemos indicado, ambas partes descansan en disposiciones específicas de la Constitución y de los Estatutos de la Gran Logia y del reglamento de la Logia Adelphia, y no en disposiciones de la Ley núm. 22 de 1911.. El resultado es que, sin referirnos a esta última Ley, que podría ser invocada en el caso apropiado, la cuestión ante nos está controlada por el "contrato" entre la Logia Adelphia y la Gran Logia. Y, en términos generales, no conocemos razón alguna de política pública por la cual una asociación voluntaria de esta naturaleza no pueda hacer tal contrato con referencia a su afiliación, aun cuando el título de sus bienes esté, por razones formales y técnicas, a nombre de una asociación organizada bajo la Ley núm. 22. La Logia Adelphia, en síntesis, puede jugar un papel doble, como logia subordinada de la Gran Logia y como una asociación inscrita bajo la Ley núm. 22. Véanse *State* v. *Frater*, 228 Pac. 295, 296 (Wash., 1924) ; *McFadden* v. *Murphy*, supra; *Union Benev. Soc. No. 8* v. *Martin*, supra.

---

(⁴) Sobre la cuestión de confiscación de propiedad, véanse Petro, *The UE-CIO Controversy in the Courts*, Labor Law Journal, marzo, 1951; Nota, 63 Harv.L.Rev. 1413; Nota, *Labor Union Funds and Secessionists*, 33 Ill.L.Rev. 977; Nota, *Intra-Union Disputes Concerning Union Funds*, 47 Yale L.J. 483; Wrightington, *Unincorporated Associations and Business Trusts*, pág. 356; Nota, 33 Minn.L.Rèv. 156, 167; Nota, 34 Minn. L.Rev. 357. *Cf. United States Sav. Bank of Newark* v. *Schiller Lodge No. 66, F. & A. M. et al.*, 176 Atl. 330 (N.J., 1935).

 El tercer señalamiento es que la corte inferior cometió error al resolver que era válida la actuación del Gran Maestro (*a*) al expulsar a los miembros que votaron a favor de la resolución del 12 de mayo de 1948, (*b*) al declarar vacantes los puestos de los dignatarios, y (*c*) al ordenar que se celebrasen nuevas elecciones para cubrir dichos puestos. En apoyo de este error, la apelante cita la Anotación en 94 A.L.R. 639 al efecto de que miembros de una orden fraternal no pueden ser expulsados de la misma sin notificación y audiencia.

La expulsión de miembros de una asociación voluntaria es de ordinario una cuestión de disciplina interna con la cual las cortes no intervienen. *Rivera* v. *Junta Rel. Trabajo*, 70 D.P.R. 342, 348, nota 4; *Luce & Co.* v. *Junta Relaciones Trabajo*, 71 D.P.R. 360, 376; *Logia Adelphia* v. *Gran Logia Soberana*, supra; *Polin* v. *Kaplan*, supra; *MacPherson* v. *Green*, 72 N.Y.S.2d 790 (S.Ct., 1947). Sin embargo, aun cuando el caso sea uno en los cuales las cortes intervienen, las partes perjudicadas deben de ordinario demostrar que hán agotado sus remedios dentro de la organización antes de poder recurrir a las cortes. Anotación, 168 A.L.R. 1462; *Polin* v. *Kaplan*, supra; *Tesorero* v. *Miller*, 88 N.Y.S.2d 87 (App. Div. 1949); *Cromwell* v. *Morrin*, supra; *Wrighting-ton*, supra, pág. 315. *Cf.* Nota, 20 Minn.L.Rev. 657, 659, reimpreso en Handler, *Cases on Labor Law;* Nota, 14 U. of Chi.L.Rev. 416; *Washington Local Lodge* v. *International Brotherhood*, 203 P.2d 1019 (Wash., 1949); *Leo* v. *Local Union No. 612, Etc.*, 174 P.2d 523 (Wash., 1946); *Cox* v. *United Brotherhood of Carpenters, Etc.*, 69 P.2d 148 (Wash., 1937). Aquí no se ha demostrado tal cosa. Por el contrario, la apelante no apeló del Decreto del Gran Maestro a la Gran Logia, como tenía derecho a hacerlo bajo el artículo 160 de los Estatutos. En consecuencia nunca llegaremos a la cuestión de la validez del procedimiento usado para expulsar a los miembros del grupo demandado.

Además, la cuestión aquí es qué grupo constituye la Logia Adelphia, y no si determinados miembros fueron debidamente expulsados o no. Finalmente, la cuestión en cuanto a la expulsión es académica en vista del hecho de que a través de esta controversia los miembros del grupo demandado han asumido consistentemente la posición de que no son miembros de la logia que todavía está afiliada a la Gran Logia. Su actuación equivale a retirarse de la Logia Adelphia así afiliada, y en consecuencia no pueden quejarse del procedimiento empleado para expulsarlos, el cual meramente vino a confirmar su propia actuación anterior. *Hamilton* v. *White*, 22 P.2d 1089, 1092 (Ariz., 1933); *Gorman* v. *O'Connor*, supra; *McFadden* v. *Murphy*, supra; *Sabourin* v. *Lippe*, supra.

En cuanto a la actuación del Gran Maestro destituyendo a los dignatarios de la Logia Adelphia que habían votado a favor de la resolución del 12 de mayo de 1948 y convocando elecciones parciales a tenor con el artículo 114 de los Estatutos, la cuestión ahora es académica, en vista del hecho de que estos dignatarios han sido sustituídos en las elecciones anuales que presumiblemente fueron celebradas posteriormente de acuerdo con el artículo 98 de los Estatutos.

El cuarto señalamiento es que la corte inferior cometió error al resolver que el grupo demandante había agotado sus remedios dentro del orden masónico antes de recurrir a las cortes. Aquí una vez más la apelante sostiene que el remedio era la reconsideración de la resolución del 12 de mayo de 1948, a tenor con los artículos 141 y 142 de los Estatutos de la Gran Logia. Pero ya hemos visto que el artículo 160 daba derecho a la demandante a apelar ante el Gran Maestro sin solicitar la reconsideración. Por consiguiente convenimos con la corte inferior en que el grupo demandante, habiendo apelado de conformidad con el artículo 160, había agotado su remedio dentro de la organización, según lo exige la jurisprudencia. En verdad, el grupo

demandante meramente pide a las cortes que implementemos la decisión favorable que obtuvo del Gran Maestro al apelar de la resolución del 12 de mayo.

El quinto señalamiento es que la corte inferior cometió error al decidir que si la resolución del 12 de mayo fuere sostenida, los derechos de los masones que permanecieron leales a la Gran Logia serían perjudicados. La apelante arguye que el grupo demandante puede sencillamente continuar afiliado a la Gran Logia bajo cualquier otro nombre que no sea el de la Logia Adelphia. Pero dicha contención pasa por alto las dos importantes cuestiones que precipitaron este pleito: (1) el título a los bienes de la Logia Adelphia; (2) el derecho a usar el nombre, Logia Adelphia. Y, como ya hemos visto, los miembros del grupo minoritario, quienes hicieron un esfuerzo sin éxito para separarse de la Gran Logia y que también en efecto se retiraron de la Logia Adelphia como afiliada a la Gran Logia, no pueden reclamar ni el título a los bienes de la Logia Adelphia ni el derecho a usar dicho nombre.

El sexto error se refiere a la concesión a la demandante de la suma de $500 para honorarios de abogado. No vemos de qué manera la corte inferior abusó de su discreción al conceder dicha suma.

*La sentencia de la corte de distrito será confirmada.*