HARPOOT ASSYRIAN UNITED ASSOCIATION OF AMERICA *vs.* ASSYRIAN NATIONAL UNION, INC.

SAME *vs.* ASSYRIAN NATIONAL UNION, INC., & others.

HARPOOT ASSYRIAN UNITED ASSOCIATION OF AMERICA & others *vs.* GEORGE M. HOYEN & others.

Worcester.    September 21, 1936. — December 28, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Corporation,* Revival of dissolved corporation, Meetings. *Notice. Evidence,* Presumptions and burden of proof. *Deed,* Condition.

It was no defence to a suit in equity by a Massachusetts corporation, revived under G. L. (Ter. Ed.) c. 155, § 56, that the application to the commissioner of corporations and taxation for revival contained

a misrepresentation that it was by a majority of the members of the corporation, since it appeared that the application was by "interested parties."

Upon refusal by those who had been officers of a corporation of a request by members to call an annual meeting which was in order after its revival by the commissioner of corporations and taxation, the fact that such request was not sufficient under the by-laws to require the officers to call a special meeting did not make improper the issuance by a justice of the peace, upon application by three members, of a warrant for the calling of the meeting under G. L. (Ter. Ed.) c. 155, § 15.

A finding, that action at an annual meeting of a Massachusetts corporation, at which a quorum was present, was valid although notice by registered mail was given only to certain members, was warranted where it appeared that the other members had actual notice and it did not appear that notice by registered mail to all members was required by the by-laws.

Property conveyed by one fraternal corporation as part of a proposed merger of three such corporations and upon an implied condition that the other two would make a like conveyance, could be recovered upon failure of one of the other two also to convey.

THREE BILLS IN EQUITY in the Superior Court, the first begun by writ dated March 9, 1933, and the other two filed on April 10, 1934.

The defendants appealed from final decrees entered by order of *Broadhurst*, J.

*C. E. Tupper*, for the defendants.

*L. W. Cooch*, for the plaintiff.

CROSBY, J. These are three bills in equity, in two of which the sole plaintiff is a fraternal or charitable corporation; in the third case the plaintiffs are the corporation, its president, treasurer and clerk. The corporate plaintiff hereinafter will be referred to as the Harpoot Association.

The suits were referred to a master who found the following facts: The Harpoot Association is a fraternal organization, incorporated under the laws of this Commonwealth in November, 1911. During the year 1931 it had been suggested to its members that it might be desirable to combine with two similar Assyrian associations of Boston in order to create a more powerful and influential corporation. As a result of these suggestions certain members of the three organizations were appointed to formulate plans for such a merger. This group was known as the Assyrian

National Union Committee.   At a meeting of the corporate plaintiff on June 25, 1931, it was unanimously voted that the Harpoot Association should be dissolved, that all current expenses should be paid, that $5,000 should be donated to the Assyrian Apostolic Church in Worcester, and that the balance of the money held by the corporate plaintiff and all its property should be transferred to the Assyrian National Union Committee.   The debts were promptly paid, and the $5,000 was paid to the church on October 14, 1931.   At a meeting of the members held on July 9, 1931, the president of the Harpoot Association, George M. Hoyen, announced that in the future the members would meet as the Worcester branch of the corporate defendant, herein referred to as the National Union.   It was also voted at this meeting that the same officers would continue in office until the annual meeting in January, 1932.   During the remainder of the year 1931 the members met in harmony each month.   The dissolution of the Harpoot Association took effect March 31, 1932.

There was no suggestion of reversing the action regarding dissolution until late in 1932, when Chavoor and Ohan, former directors of the Harpoot Association, presented an application to the commissioner of corporations and taxation for the revival of the Harpoot Association.   The application recited that it was signed by a majority of the members of the Harpoot Association.   In fact, only eight of the twenty-one signers were members at the time of the vote of dissolution, and these eight signers were less than a majority of those who were members at the time of the dissolution.   On January 4, 1933, the Harpoot Association was revived by the commissioner for all purposes.   A few days later Chavoor and two other members met Hoyen, who was president at the time of the dissolution, and Chavoor told him that the Harpoot Association had been revived, and asked him to call the annual meeting.   Hoyen replied in substance that the Harpoot Association was not in existence, and that no meetings could be held.   On February 11, 1933, written application was made under G. L. (Ter. Ed.) c. 155, § 15,

to a justice of the peace for the issuance of a warrant to call a meeting of the Harpoot Association. The application was signed by sixteen persons, of whom seven were members at the time of the vote of dissolution, and eight were members when the dissolution took effect. The signatures were obtained by Chavoor and Ohan. They made no request upon the secretary for a list of the members, and no effort was made to obtain the signatures of those members who were believed to be unfriendly to the movement. The by-laws of the Harpoot Association provided that the secretary should give notice of all meetings of the corporation, that the president should have the power to call special meetings and that at the written request of seven members he was required to call such a meeting. No written request for the calling of such a meeting was ever made.

On February 14, 1933, a warrant was issued by said justice of the peace to Albert G. Chavoor, directing him to call a meeting of the Harpoot Association "by giving such notice as is required by law" and directing Chavoor to preside at the meeting until a clerk had been chosen and qualified. According to the warrant the business to be transacted was, amongst other things, "to elect officers and to decide what the Association 'will do about getting back the money in the bank which is now transferred or in the name of the Assyrian National Union or Assyrian National Union, Worcester Branch, or anybody who is acting for them.'" The notices were sent by registered mail to twelve of those who had been members of the Harpoot Association, and who were deemed by Chavoor to be hostile to the purposes for which the meeting was to be held. There was no evidence as to whether notice was given to the other members, but they had actual notice of the time and place of the meeting. In pursuance of the notice a meeting was held at the time and place specified. Few, if any, of those who received notices by registered mail attended. A quorum was present of those who were then officially listed as members of the organization. Chavoor presided. Officers were elected for the year 1933, and a

vote was passed to commence the litigation which is the subject matter of these bills in equity, and to employ the counsel who are prosecuting them.

In the first bill the plaintiff sought to recover the bank deposits which had been transferred to the National Union. At the time of the transfer the National Union had not come into existence, its incorporation not being in effect until May 23, 1932. In the Superior Court it was decreed that the bank deposits were not in the possession of the corporate defendant, and for this reason the bill was dismissed.

In the second suit the plaintiff sought a decree nullifying the deeds which purported to convey the realty of the Harpoot Association to seven of the nine members of the Assyrian National Union Committee and from them to the National Union. The trial judge found that "the plaintiff's vote to dissolve and to convey its real estate to the proposed new corporation was impliedly conditional upon a similar conveyance by each of the other two proposed constituents," and that "Perch and Hoyen, who executed the deed on behalf of the plaintiff in February, 1934, not only were not then officers of the plaintiff, but they knew that the condition upon which delivery of the deed was authorized had not been and would not be complied with by one of the other two proposed members of the merger." He ruled that "under these circumstances execution and delivery of the deed was not authorized by the plaintiff, and that both the deeds . . . are invalid." It was decreed that the deeds were void and the National Union was ordered to execute a deed conveying any title it had in the property to the plaintiff.

The third suit is brought to compel the redelivery to the plaintiffs of the books, records and papers of the Harpoot Association. The judge found that the individual defendants did not appear from the facts found by the master to be entitled to possession of the books, records and papers, and a decree was entered adjudging the plaintiffs entitled to the relief sought.

In the first case the defendant, and in the second and third cases the defendants, appealed from the final decree.

The defendants contend that the representation in the application for a revival of the Harpoot Association is fatal to the plaintiffs' cases. The application recited that it was signed by a majority of the members of the Harpoot Association. It appears that only eight of the twenty-one signers were members of the Harpoot Association at the time of the vote for dissolution. It was held in *Montgomery* v. *Forbes*, 148 Mass. 249, that if a buyer of goods for his sole benefit makes the purchase in the name of a corporation, not in good faith organized by him and having no real existence, and gives in payment therefor a promissory note in the name of the corporation, the seller may treat the note as void and recover against the buyer personally on the original contract for goods sold and delivered. Whether a misrepresentation in an application to revive a corporation would have the same effect need not be considered, for any misrepresentation in the present case was immaterial. G. L. (Ter. Ed.) c. 155, § 56, provides that the commissioner of corporations and taxation may revive a dissolved corporation at any time within three years from the date of its dissolution "upon application by any interested party." In the present cases eight signers of the application were interested parties. It was held in *Idan Liitto Temperance Society* v. *Isakson*, 219 Mass. 95, that there is no absolute right in a small minority to insist upon the continuance of a corporation if reasonable cause for dissolution exists. In the present cases the application for revival was signed by twenty-one persons. This number was almost equal to the number of members who were entitled to vote in the Harpoot Association at the time of its dissolution. Although only eight of the twenty-one were former members, the fact that twenty-one members signed would plainly indicate that more than a mere minority was interested in the revival of the corporation. Thus it appears that there was no material misrepresentation in the application to the commissioner of corporations and taxation.

The defendants contend as a second reason for reversal that the meeting of February 23, 1933, when the present officers of the Harpoot Association were elected, was not properly called, and consequently these suits were never authorized. The by-laws of the Harpoot Association provided that the president had power to call special meetings, and that at the written request of seven members he must call such a meeting. The only request made of Hoyen after the revival of the Harpoot Association was an oral request by three members. The defendants contend that upon the refusal of such a request no valid warrant could be issued by a justice of the peace under G. L. (Ter. Ed.) c. 155, § 15, for a meeting to be called under G. L. (Ter. Ed.) c. 155, § 15; that this statute contemplates a situation where it is difficult or impossible to call a meeting in the usual way provided by the by-laws of the corporation; and that if a meeting can be called in the usual ordinary way the statute is not applicable. Such an interpretation would seem sound, and a similar provision now contained in G. L. (Ter. Ed.) c. 67, § 12, has been so interpreted. *Reformed Methodist Society of Douglas* v. *Draper*, 97 Mass. 349. *Wood* v. *Cushing*, 6 Met. 448. This contention of the defendants presupposes that upon the revival of a corporation those persons are still officers who were such at the time of dissolution, and that the National Union is not in the position of a third person claiming a benefit under the by-laws. *Flint* v. *Pierce*, 99 Mass. 68. *Council of Jewish Women* v. *Boston Section Council of Jewish Women*, 212 Mass. 219. Even if these contentions are sound, the defendants have not made out a defence. G. L. (Ter. Ed.) c. 155, § 15, provides: "If, by reason of the death or absence of the officers of a corporation, or other cause, there is no person duly authorized to call or preside at a legal meeting, or if the clerk or other officer refuses or neglects to call it, a justice of the peace may, upon written application of three or more of the members or stockholders, issue a warrant to any one of them, directing him to call a meeting by giving such notice as is required by law . . . ." The by-laws of the Harpoot Association provide that its officers are to be elected each year

at the annual meeting on the first Monday in January. After the corporation had been revived on January 4, 1933, no meeting was called for the election of officers. The request made by Chavoor of Hoyen was to "call the annual meeting for the purpose of electing officers." As it was not a request to call a special meeting, a written request made by seven members was not required. It was the duty of the officers of the Harpoot Association to call the annual meeting. *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 508, 509. It is apparent that the officers failed to perform their duty, and therefore three members were entitled to petition a justice of the peace to issue a warrant and proceed under the statute. It follows that the meeting at which the officers who instituted these suits were elected was legally called.

It is further contended by the defendants that the meeting at which the present officers were elected was invalid because notices were not sent to all the members. The master, however, expressly found that notices were sent by registered mail to twelve members who were deemed opposed to the purposes for which the meeting was called, "that there was no testimony as to whether or not any notice was given to the others who were members of the Harpoot Association at the time of its dissolution, but . . . that those others had actual notice of the time and place of said meeting." It did not appear that notice by registered mail to all the members was required, and in the circumstances it will be presumed that adequate notice was given. *Sargent* v. *Webster*, 13 Met. 497.

It follows that the third suit in equity may be maintained to compel the surrender of the books and records of the corporation by the former officers. *Society of Mutual Succor* v. *Iacobe*, 232 Mass. 263.

In the suit by which the plaintiff seeks to have the deeds declared invalid, the plaintiff is also entitled to relief. It is found that these deeds were executed in 1934, although one purports to have been executed in 1931 and the other in 1932. The judge found that the authority to execute the deed by the plaintiff was conditional upon a similar deed

being executed by each of the other two societies that had agreed to join the merger, and that this condition had not been and would not be carried out. It was the duty of the judge "to draw proper inferences from the findings unaffected by the conclusions of the master, and it is our duty to draw such inferences unaffected by the conclusions of the master or those of the judge." *Robinson* v. *Pero*, 272 Mass. 482, 484. *Ryder* v. *Donovan*, 282 Mass. 551. We are of opinion that the inferences drawn by the judge were correct. If the authority of the officers to convey the property was limited, it is plain that the National Union has no right to the property. See *Mussey* v. *Beecher*, 3 Cush. 511; *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 11; *Howard* v. *Barnstable County National Bank of Hyannis*, 291 Mass. 131.

In each case the final decree is affirmed.

*Ordered accordingly.*