NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-786

SUSAN LYNN LAVENDAR BARAN[1]

vs.

WILLIAM N. FORD, SR., & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

William N. Ford, Sr., the Sterling Foundation, Inc., and

Reynold Greenleaf & Associates, LLC, (the defendants) appeal

from a Superior Court judgment in favor of Susan Lavendar Baran[3]

on her claim for declaratory judgment that sought to void a

revival of the Ann Wigmore Foundation (AWF), a Massachusetts

nonprofit organization operating in New Mexico, and to nullify

---

[1] Individually and as director of the Ann Wigmore Foundation, Inc.

[2] The Sterling Foundation, Inc.; Reynold Greenleaf & Associates, LLC; and the Secretary of the Commonwealth.

[3] In accordance with the pleadings and appellate briefs, we refer to the plaintiff as Lavendar.

the subsequent merger of AWF with defendant Ford's nonprofit, Sterling.[4]

On appeal, the defendants argue that the court lacked subject matter jurisdiction because Lavendar did not have standing. In addition, the defendants contend the trial judge erred (1) by concluding that the defendants were not interested parties under the revival statute, G. L. c. 156B, § 108, (2) by concluding that the defendants made fraudulent misrepresentations in their application for revival, and (3) by excluding evidence of Lavendar's mismanagement of AWF. We affirm.

Background. We summarize the facts as found by the trial judge.[5]

---

[4] Lavendar sued the defendants and the Secretary of the Commonwealth in Suffolk Superior Court seeking a declaratory judgment that the Secretary's approval of the defendants' revival of AWF and subsequent merger with Sterling should be deemed null and void, and in addition, Lavendar asserted claims against the defendants for fraud, conversion, and civil conspiracy. Sterling counterclaimed against Lavendar for declaratory judgment, malicious abuse of process, conversion, and "breach of contract and promissory estoppel." The judge bifurcated the trial and addressed Lavendar's declaratory judgment claim first. Only that claim is before us on appeal. The parties, pursuant to Mass. R. Civ. P. 41 (a) (1) (ii), 365 Mass. 803 (1974), stipulated to the dismissal of all the remaining claims and counterclaims without prejudice, including those against the Secretary, who is not a party to this appeal.

[5] On appeal, the defendants accept all the judge's factual findings.

2

Dr. Ann Wigmore was a pioneer in the use of wheatgrass juice and living foods to detoxify the human body, mind, and spirit. She founded AWF, a Massachusetts nonprofit corporation, to advance her mission. On Wigmore's death in 1994, the work of AWF was carried on by its board of directors, which at that time consisted of Shu Chan, Damian Andrews, and Joseph Petrelli.

Chan and Andrews decided to move AWF's operations from the Boston area to New Mexico in 1995. The New Mexico Secretary of State issued a certificate recognizing AWF as a foreign nonprofit corporation, effective March 1995. AWF sold its property in Boston and used the proceeds to acquire a twenty-one acre parcel of improved land in San Fidel, New Mexico. By 2000, AWF had "fallen into a state of disorganization."

Lavendar worked for Wigmore in the early 1990s. In August 2000, Lavender went to AWF's site in San Fidel to assist with the operations. In September 2000, AWF's directors appointed Lavendar to serve as manager of AWF with full authority to reside at and take care of the property. By approximately late 2002, before resigning en masse, AWF's directors voted unanimously to appoint Lavendar to be a director and to become president of AWF. After taking the position, Lavendar failed to file annual corporate reports for AWF. As a result, in 2012 the Secretary of the Commonwealth revoked AWF's Massachusetts corporate charter, and in 2018 the New Mexico Secretary of State

revoked AWF's certificate to operate as a foreign nonprofit corporation.  Lavendar was unaware of these occurrences.

In 2018, Lavendar, having decided to move AWF's operations to Virginia, listed the San Fidel property for sale.  Defendant Ford, the president of R. Greenleaf Organics, Inc., arranged for a meeting with Lavendar after he became interested in using AWF's site as an addiction treatment and rehabilitation center to be run by Sterling, another organization he presided over.  During this meeting, Lavendar provided background on AWF, including information pertaining to how she, as the director of AWF, had full authority to act on its behalf.  Before this meeting with Lavendar, Ford was unaware of and had no connection to Wigmore, AWF, or AWF's mission or property.

After their meeting, Ford learned that while filings with the Secretary of the Commonwealth listed Chan and Petrelli as the directors of AWF, more recent filings with the New Mexico Secretary listed Lavendar and Karen Hammer as AWF's directors.  Ford also discovered that AWF's corporate status had lapsed in both States.  As stipulated by Ford during trial, he was also aware that the "AWF foundation [sic] owned the property and that Lavendar was selling on behalf of AWF."

During a tour of the property on November 12, 2018, Ford suggested to Lavendar that they "marry" the two nonprofit entities, AWF and Sterling.  Lavendar did not agree, and she

4

expressed no interest in working with Ford or for Sterling. Despite this, on November 13, 2018, Ford, on Sterling's behalf and unbeknownst to Lavendar, prepared and electronically filed an application for revival with the Secretary of the Commonwealth.[6]  The Secretary approved Ford's application the following day, November 14.  Notably, Ford made no attempt to locate and communicate with either Chan or Petrelli before filing the revival application, despite asserting in the application that he did so.

On November 28, 2018, Ford visited Lavendar at the AWF property in San Fidel and failed to inform her that he had revived AWF.  Ford again tried to get Lavendar to agree to merge AWF into Sterling; once again, Lavendar declined.  On November 29, 2018, Ford sent an e-mail message to Lavendar that reiterated his plan to merge AWF with Sterling, and offered Lavendar a seat on Sterling's board and to stay on as a property manager once the merger was complete.

On December 3, 2018, Ford filed an annual report for AWF with the Secretary of the Commonwealth.  He listed five

---

[6] Ford made the following representations in this application:  (1) Sterling and AWF are parallel in their missions and values; (2) AWF "has effectively been defunct" for some time; (3) Ford had been unable "to locate anyone with direct authority to revive the corporation," despite having "tried very hard" to do so; (4) Ford was making a request for a six-month revival of AWF for the purpose of merging AWF with Sterling.

directors of AWF, naming himself president, Jessica Hatfield as treasurer, Hammer as clerk, Chris Romero as vice president, and Lavendar as the fifth director. On December 18, he sent an e-mail message to these new directors to inform them that the next board meeting would occur on December 27. The next day, December 19, Lavendar responded to Ford's e-mail message by demanding Ford "[s]top all activity with the Takeover" of AWF business and property. After reading Lavendar's e-mail message demanding he desist in his takeover of AWF, Ford quickly organized a board meeting, which only he, Hatfield, and Romero attended. At this meeting on or about December 19, the board members voted to remove Lavendar and Hammer as directors.

On December 20, Ford filed a certificate of change of directors for AWF with the Secretary. On December 27, 2018, Ford, Hatfield, Romero, and two newly-appointed directors all voted to approve AWF's merger with Sterling. Ford immediately filed AWF's articles of merger with the Secretary. Once the Secretary approved the merger, Ford successfully obtained Lavendar's eviction from AWF's property in San Fidel.

Procedural history. On December 21, 2018, prior to the merger and eviction, Lavendar filed a civil complaint and sought an injunction against Ford in a New Mexico court, seeking to prevent Ford from gaining control of AWF and its property. Once the New Mexico court ruled it was without jurisdiction, Lavendar

6

resorted to pursuing her claims in Federal court in the District of Massachusetts.  However, Lavendar's suit was dismissed for lack of jurisdiction in Federal District Court.  See Ann Wigmore Found., Inc. vs. Sterling Found., Inc., U.S. Dist. Ct., No. 1:20-cv-11150-IT (D. Mass. May 11, 2021).  Lavendar then sought declaratory relief in the Superior Court which led to this appeal.

Discussion.  1.  Standing.  The defendants argue that Lavendar lacks standing to challenge their revival of AWF. Because standing in this case presents a question of law, our review is de novo.  Doucet v. FCA US LLC, 492 Mass. 204, 207 (2023).

"The notion of standing is an 'elastic concept []' whose meaning depends on the particular parties at issue, and 'standing requirements should be liberally construed' in declaratory judgment proceedings" (citations omitted).  Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 329 (2014), S.C., 476 Mass. 51 (2016).  A party has standing to seek declaratory relief "when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred" (citation omitted).  Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 607 (2017).

7

"Whether a plaintiff's injury falls within the so-called 'zone of interests' of a statute or regulatory scheme depends upon a number of factors, including '[1] the language of the statute in issue; [2] the Legislature's intent and purpose in enacting the statute; [3] the nature of the administrative scheme; [4] decisions on standing; [5] any adverse effects that might occur, if standing is recognized; and [6] the availability of other, more definite, remedies to the plaintiffs.'"

Id., quoting Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135-136 (2000).

The parties agree that G. L. c. 156B, § 108, governs the revival of AWF after its corporate charter was revoked.[7]  Under this statute, only an "interested party" may apply to have a corporation revived.  G. L. c. 156B, § 108.  As the former director of AWF, Lavendar qualifies as an interested party.  See Barker-Chadsey Co. v. W.C. Fuller, Co., 16 Mass. App. Ct. 1, 5-6

---

[7] General Laws c. 156B, § 108, provides, in pertinent part, that:
"If the state secretary finds that the existence of a corporation has terminated in any manner and that such corporation ought to be revived for all purposes or for any specified purpose or purposes with or without limitation of time, he may, upon application by an interested party, file in his office a certificate in such form as he may prescribe reviving such corporation.  The state secretary may subject the revival of such corporation to such terms and conditions . . . as in his judgment the public interest may require.  Upon the filing of a certificate reviving a corporation for all purposes, said corporation shall stand revived with the same powers, duties and obligations as if it had not been dissolved, except as otherwise provided in said certificate; and all acts and proceedings of its officers, directors and stockholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall, except as aforesaid, stand ratified and confirmed."

8

(1983) (officers or directors of corporation that has been dissolved or whose charter has been revoked may apply to Secretary for revival). As a consequence of the defendants' revival of AWF, Lavendar suffered injury. She lost her position as the director of AWF, her employment, and her home. This adequately alleged a harm caused directly by Ford's revival application; in addition, Lavendar anticipated a benefit -- a restored position with AWF -- should the contested revival be resolved in her favor. See New England Div. of the Am. Cancer Soc'y v. Commissioner of Admin., 437 Mass. 172, 177 (2002) citing Mitchell v. Secretary of Admin., 413 Mass. 330, 333 n.7 (1992) (organizations that stand to benefit from increased expenditures have standing to challenge improper transfer from Highway Fund). Accordingly, Lavendar's circumstances as a director of AWF who was injured by the defendants' revival placed her "within the zone of interests" set forth by G. L. c. 156B, § 108. Revere, 476 Mass. at 607.

As for the defendants' claim that Lavendar failed to exhaust all administrative remedies, we recognize that "[a]s a general rule, we require parties to exhaust their administrative remedies prior to seeking judicial relief." Luchini v. Commissioner of Revenue, 436 Mass. 403, 404-405 (2002). Specifically, the defendants, relying on G. L. c. 180, § 3A, argue that Lavendar "could have sought to correct the filings

9

with the Secretary."[8]  But a longstanding exception to this rule excuses compliance when it would be inadequate or futile. Ciszewski v. Industrial Acc. Bd., 367 Mass. 135, 141 (1975). The circumstances in this case reveal no clear administrative remedial path and demonstrate that any attempt to pursue one would have been futile.  See O'Neill v. City Manager of Cambridge, 428 Mass. 257, 260 (1998) ("[E]xhaustion cannot be required where no administrative remedy exists").  First, the Secretary,[9] a named defendant in the underlying action, asserted in his first affirmative defense that his office required a court order to unwind and void the defendants' application for revival.[10]  The Secretary made no challenge to Lavendar's standing.

---

[8] While the defendants cite to no authority mandating this approach, we note that Lavendar, on December 7, 2018, did attempt to revoke Ford's application for revival by asserting it was fraudulent; the Secretary rejected her filing.

[9] The Secretary did not participate in the trial.

[10] The Secretary's first affirmative defense stated as follows:
"The Complaint fails to state a claim upon which relief can be granted for one portion of the relief requested in Prayer for Relief (A).  Specifically, Prayer for Relief (A) requests several specific judgments and orders, including a judgment declaring 'the 2018 revival of AWF and the subsequent merger of AWF and Sterling . . . void and of no legal effect,' as well as a separate order directing 'the Secretary of the Commonwealth of Massachusetts to take all necessary steps to unwind and void the Application for Revival and the Application for Merger.' . . .  The

Next, the defendants' exhaustion claim is based on the false premise that Lavendar sought to "dissolve" AWF. The judge made no such finding. To the contrary, the judge found that Lavender, in 2018, attempted to move AWF to Virginia, thus prompting the listing of the property in San Fidel for sale, eventually leading to Ford's involvement. In addition, the parties stipulated that Lavendar had sought to revive, not dissolve, AWF's nonprofit status by attempting to file documents with the office of the Secretary of State of New Mexico. The Secretary of State of New Mexico rejected Lavendar's revival filings. Thus, we reject the defendants' contentions that Lavender either acted to dissolve AWF or was required to pursue a strategy of dissolution pursuant to G. L. c. 156B, § 100, and G. L. c. 180, § 11A, before bringing suit.

Finally, the fact that the Secretary approved Ford's request for revival of AWF and merger with Sterling does not deprive Lavender of standing. As the Supreme Judicial Court

Complaint fails to state a claim for the latter order (an order directing the Secretary 'to take all necessary steps to unwind and void the Application for Revival and the Application for Merger') because the Secretary lacks legal power and authority to 'unwind' or 'void' public filings maintained by the Corporations Division. Instead, the Secretary's legal authority authorizes the Corporations Division, upon the entrance of a judgment and order of a court declaring that specified filings in the public records are void and of no legal effect, to maintain a notation of that judgment and order in the public records of the affected corporation." (Emphasis added.)

11

stated in Russell Box Co. v. Commissioner of Corps. & Taxation, 325 Mass. 536, 541 (1950), "the granting of the certificate [of revival by the Secretary] was not in itself a determination of any rights or duties. It was preliminary only to necessary action in the courts. It merely made it possible for rights and duties to be considered in the proper forum."

2. The defendants' statuses as interested parties. The issue whether the trial court erred in ruling that the defendants were not interested parties under G. L. c. 156B, § 108, is a mixed question of law and fact. The defendants do not contest the judge's factual findings, and we review the judge's legal conclusions de novo. See H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022).

Although the Supreme Judicial Court has broadly defined an interested party pursuant to § 108 as a party "who is interested in having the corporation revived," Russell Box Co., 325 Mass. at 540, the case law illustrates that a party does not automatically gain interested party status merely by filing a revival application and expressing any interest. Instead, an "interested party" must have some preexisting connection in the dormant corporation at the time revival is sought. See e.g., Harpoot Assyrian United Ass'n of Am. v. Assyrian Nat'l Union, Inc., 296 Mass. 224, 229 (1936) (former members of dissolved association were interested parties); In re Acushnet River & New

12

Bedford Harbor: Proceedings re Alleged PCB Pollution, 675 F. Supp. 22, 41 (D. Mass. 1987) (parties who sought to enforce claimed indemnification rights were interested parties under § 108). For example, in evaluating whether a party may seek to revive a corporation, courts have concluded interested parties include a corporate officer who was simply ignorant of the fact of dissolution. See Barker-Chadsey Co., 16 Mass. App. Ct. at 5. Additionally, an entity or individual who has a pending claim against the dissolved corporation is an interested party. Russell Box Co., 325 Mass. at 540.

The defendants have not identified, nor have we found, a case in which the court has found that a party who had no prior relationship with a revoked corporation qualified as an interested party pursuant to § 108. The defendants' claim that their interests are materially indistinguishable from the interested parties in Harpoot, 296 Mass. at 229, is misplaced. In Harpoot, supra, the Supreme Judicial Court concluded that former members of a fraternal organization qualified as interested parties in filing for revival. By contrast, in the case here, it is undisputed the defendants had no business with, nor even awareness of, AWF before Lavendar offered AWF's property for sale.

Considering the defendants' lack of connection with AWF as well as AWF's status at the time the defendants sought revival,

13

we agree with the judge's legal conclusion that "if the Secretary had known that AWF was not defunct and that it had at least one duly-appointed Director who was residing at and attempting to manage AWF's property, the Secretary could not reasonably have found that Ford was an 'interested party' with a legal right to revive and take control of AWF."

The defendants, citing Russell Box Co., 325 Mass. at 541, also argue that the Superior Court was without jurisdiction to review the Secretary's decision finding that Ford was an interested party, and that the Superior Court erred by substituting its own judgment for that of the Secretary in determining the defendants were not interested parties.[11] See id. ("Generally speaking, it is for the commissioner and not for the court to decide whether on the facts presented to him a certificate ought to issue"). However, as noted above, granting a certificate of revival is merely a preliminary step that must be taken before rights and duties can be considered, or challenged, in court. Id. Otherwise stated, the Secretary's approval of the defendants' revival application for AWF cannot deprive Lavendar of a judicial forum to challenge that action.

---

[11] We note that the court in Russell Box Co., 325 Mass. at 539-541, did not unconditionally defer to the commissioner's interested-party finding, but instead, determined the petitioner was an interested party only after reviewing that party's basis for seeking revival.

14

Considering the Secretary's position that a court order was necessary to revoke a revival, the defendants' position -- that the Superior Court is without jurisdiction -- would leave no recourse to a party aggrieved by revival. Thus, we conclude that the Superior Court was permitted to review whether the Secretary's determination would have been the same had the Secretary known the statements made were false.

Finally, even assuming arguendo that we were to conclude the defendants were interested parties as a matter of law, the fact that the judge found the defendants' revival application contained false statements, as discussed below, supported the judge's order voiding the revival application. See e.g., Burke v. Walpole, 405 F.3d 66, 82 (1st Cir. 2005) ("a court owes no deference to a magistrate's decision to issue an arrest warrant" where "reckless misstatements or omissions" were included in warrant affidavit). See also Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1329 (Fed. Cir. 2000) (district court was not required to defer to finding of patent examiner, as court found that examiner's statement was not persuasive in light of all evidence). Once again, this is particularly true considering the Secretary's answer to Lavendar's complaint that it was unable to administratively void the revival application, and instead could only do so in response to a court order.

15

3.  Fraudulent misrepresentations.  We review the issue whether Ford made fraudulent and material misrepresentations in the revival application under the de novo standard.  "[T]o ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts."  Kendall v. Selvaggio, 413 Mass. 619, 621 (1992).

Fraud involves "a misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts."  Christian v. Mooney, 400 Mass. 753, 764 (1987), cert. denied, 484 U.S. 1053 (1988).  Fraud or deceit "may be perpetrated by an implied as well as by an express representation" (citation omitted).  Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990).  "A representation is one of opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment" (citation omitted).  McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995).

> "In some circumstances, however, a statement that in form is one of opinion may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it. This is particularly true where the maker is understood to have special knowledge of facts unknown to the recipient."

16

Id.  See Briggs, supra (car dealer's representation to uninformed buyer that car was in "good condition" was construed to be statement of fact).

The defendants challenge the judge's conclusion that Ford's statement in the revival application, that "[w]e have tried very hard to locate anyone with direct authority to revive the corporation but have had no success," was a material falsehood. We discern no error.  Through that assertion, Ford was not giving an opinion or offering his personal judgment on an issue, but rather, was representing that he did something -- namely, that he attempted to locate someone in AWF with authority -- before arriving at a conclusion that reasonable efforts would be futile.  At the time he made this statement, Ford knew that Lavendar had told him she was the director of AWF with authority to act on its behalf, and further that she and Hammer were identified as directors of AWF in "an official filing" with the New Mexico Secretary of State.  Yet Ford omitted this information in his revival application.  See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 25 (2018) (fraud may occur by omission).  In addition, Ford knew there were two directors, Chan and Petrelli, listed in the Secretary's database, but he did not attempt to contact either of them until after he filed the application.

17

Ford made these false statements and omission in response to the application question seeking the applicant's "relationship to, or interest in, the corporation," in order to establish himself as an "interested party" to gain approval to revive and take control of AWF to merge it with Sterling. It was not error for the judge to conclude that Ford, having no recognized interest in AWF or its property, attempted to create one through his material falsehoods.

4. _Lavendar's management of AWF_. The defendants also claim that the judge erred by excluding certain evidence that would have revealed Lavendar's mismanagement of AWF, including the fact that she recorded multiple liens against AWF's property in New Mexico and allowed the property to fall into disrepair. The defendants argue that the exclusion of this evidence was prejudicial because it would have cast doubt on the injury Lavendar suffered by demonstrating that her interests in petitioning the court to void the revival of AWF were personal, thus beyond the scope of an "interested party." G. L. c. 156B, § 108.

Lavendar counters that the defendants waived this argument as it applied to whether she had standing to bring a declaratory action. We agree. The defendants attempted to enter the evidence as impeachment evidence for a limited purpose -- to demonstrate that Lavendar had failed to adequately manage AWF

18

during her time as director -- but did not claim the evidence bore on her standing to bring suit. Thus, the defendants waived the argument that the judge erred by excluding this evidence on the issue of standing. See Metro Equip. Corp. v. Commonwealth, 74 Mass. App. Ct. 63, 73 n.9 (2009) (arguments that could have been raised before trial court, but were not, are deemed waived on appeal); Palmer v. Murphy, 42 Mass. App. Ct. 334, 338 (1997) ("Objections, issues, or claims -- however meritorious -- that have not been raised at the trial level are deemed generally to have been waived on appeal").

Even if the defendants had preserved the issue, the trial judge did not abuse his discretion in excluding the evidence. "[J]udges have significant discretion in admitting or excluding evidence." Commonwealth v. Seesangrit, 99 Mass. App. Ct. 83, 91 (2021), citing Commonwealth v. Gray, 463 Mass. 731, 751-752 (2012). "[T]he appropriate test is whether the proponent of erroneously excluded, relevant evidence has made a plausible showing that the trier of fact might have reached a different result if the evidence had been before it." DeJesus v. Yogel, 404 Mass. 44, 48-49 (1989). On this record, we cannot say the defendants have made a showing that the judge would have come to a different conclusion as to Lavendar's standing had he considered the claims of liens. In fact, the judge ventured as much when inquiring, as follows, with the defense counsel for

19

Ford as to the relevance of impeaching Lavendar as to her management of AWF:

> THE COURT: "So, if hypothetically I were convinced that Ms. Lavendar was, in fact, a director of the Ann Wigmore Foundation, how would it be relevant whether she was doing an excellent job, a poor job, doing the best she can and there were still things that needed attention? I'm not understanding relevance to the issues I need to decide."
>
> MR. CADIGAN: "I understand, Your Honor. Nothing else on that."

While Lavendar's management of AWF and her intent behind and the validity of the liens may have been relevant to the merits of the defendants' counterclaims, this evidence does not bear on whether Lavendar, as the undisputed former director of AWF who lost her position and place of residence due to the defendants' revival of AWF, had standing to challenge the revival and subsequent merger with Sterling.[12] See Hoffman v. Board of Zoning Appeal of Cambridge, 74 Mass. App. Ct. 804, 809 (2009) ("The threshold question of whether [a plaintiff] has standing is different than the ultimate merit of [the] allegations").

5. Appellate costs and fees. Lavendar requests that for pursuing this appeal the defendants be sanctioned pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), and G. L. c. 211A, § 15.

---

[12] The defendants' counterclaim for declaratory judgement averred "That any liens and equitable liens placed on the Property by Plaintiffs are null and void and have no legal effect."

We agree that the defendants' appeal is frivolous and allow Lavendar's request for appellate fees and costs.  See rule 25; Avery v. Steele, 414 Mass. 450, 455 (1993) ("An appeal is frivolous [w]hen the law is well settled, when there can be no reasonable expectation of a reversal. . . .  The determination whether an appeal is frivolous is left to the sound discretion of the appellate court" [quotation omitted]).  In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), Lavendar may, within fourteen days of the issuance of this decision, apply for attorney's fees and costs with the appropriate supporting materials.  The defendants shall have fourteen days thereafter to file a response to that application.

Judgment affirmed.

By the Court (Henry, Hershfang, & Smyth, JJ.[13]),

Paul Little

Clerk

Entered:  February 11, 2025.

---

[13] The panelists are listed in order of seniority.

21